Aubrey PATE, Appellant,

v.

William C. HOLMAN, Warden, Kilby
Prison, Alabama, Appellee.

No. 21428.

United States Court of Appeals
Fifth Circuit.

Feb. 16, 1965.

Nicholas S. Hare, Monroeville, Ala., for appellant.

Richmond M. Flowers, Atty. Gen., John C. Tyson, III, Asst. Atty. Gen., Montgomery, Ala., for appellee.

Before RIVES, WISDOM and BELL, Circuit Judges.

WISDOM, Circuit Judge.

Aubrey Pate, a prisoner in Kilby Penitentiary, Alabama, appeals from an order of the district court dismissing his petition for habeas corpus and denying an evidentiary hearing on the petition. The district court held that a full hearing was unnecessary because in coram nobis proceedings the State had previously resolved all the issues the petitioner raised in this habeas corpus proceeding. We find that the state courts gave full and fair consideration to all of the petitioner's contentions except his contention that the State deprived him of his right to appellate counsel and, in effect, to the right of appeal.[1] The petitioner contends

1. See Brennan, Federal Habeas Corpus and State Prisoners, 7 Utah L.Rev. 423 (1961); Kamisar, Betts v. Brady Twenty Years Later: The Right to Counsel, 61 Mich.L.Rev. 219 (1962); Sofaer, Federal Habeas Corpus for State Prisoners: The Isolation Principle, 39 N.Y.U.L.Rev. 78 (1964); Mazor, The Right to be provided Counsel; Variations on a Familiar Theme, 9 Utah L.Rev. 50 (1964); Boskev, The Right to Counsel in Appellate Proceedings, 45 Minn.L.Rev. 783 (1964); Habeas Corpus and Post-Conviction Review (Symposium) I, 33 F.R.D. 363; II, 409 (1964); The Problems of Adequate Representation of Indigent and Other Defendants in Criminal Cases, Panel Discussion at Judicial Conference of the Second Judicial Circuit, 36 F.R.D. 129 (1964); Comment, Waiver of the Right to Counsel in State Court Cases: The Effect of Gideon v. Wainwright, 31 U. Chi.L.Rev. 591 (1964): Comment, Right to Counsel in Criminal Post-Conviction Review Proceedings, 51 Cal.L.Rev. 970 (1963).

that his retained trial counsel withdrew from the case after his conviction and that he was unable to employ appellate counsel because of his indigency. The case turns on the principles established in Townsend v. Sain, 1963, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770, Norvell v. State of Illinois, 1963, 373 U.S. 420, 83 S.Ct. 1366, 10 L.Ed.2d 456, reh. den'd 375 U.S. 870, 84 S.Ct. 27, 11 L.Ed.2d 99, and Douglas v. People of State of California, 1963, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811; reh. den'd 373 U.S. 905, 83 S.Ct. 1288, 10 L.Ed.2d 200. We remand for an evidentiary hearing.

## I.

In September 1950 Pate, a parolee, was charged with burglary and grand larceny in the Circuit Court of Tallapoosa County, Alabama. His mother and wife employed Jesse W. Pienezza, a practicing lawyer in Tallassee, Alabama, to represent him at a preliminary hearing and at his trial for the modest fee of one hundred dollars. The jury found Pate guilty; he was sentenced to ten years imprisonment. Pate did not appeal.

In May 1962, after having served other sentences, including one for twenty-five years, Pate filed a petition for writ of error coram nobis in the Tallapoosa Circuit Court. The petition asserted two grounds for relief. First, Pate alleged that he was convicted on the uncorroborated testimony of two accomplices, contrary to Alabama law (Title 15, Section 307, Code of Alabama) requiring corroborative evidence to support the testimony of accomplices. Second, Pate alleged that he was deprived of his right to appeal his conviction. He contended that the attorney who had represented him entered the armed services shortly after the trial; that his attorney's departure and his confinement in the State Penitentiary prevented his obtaining appellate counsel.

The hearing on the coram nobis petition was fixed for September 28, 1962. Four days before, the court appointed Miss Ruth S. Sullivan and Mr. John P. Oliver, two experienced, diligent, practicing attorneys, to represent the petitioner. These attorneys tried to obtain a transcript of the testimony at the original trial, but it was not available: apparently, Pienezza had not ordered a transcript for use on appeal or it was lost; the court reporter was dead, his notes lost.

Seven witnesses testified at the coram nobis hearing, including Pate and Pienezza. The Alabama circuit court, seeking to exhume the events at the trial providing the basis for the coram nobis petition, allowed Pate and his attorneys broad latitude in their efforts to show the invalidity of the conviction. Thus, in addition to considering the two contentions stated in the petition, the trial judge considered two other contentions developed during the hearing: (1) that a bailiff or deputy sheriff or other court official was a member of the jury; (2) that the circuit solicitor, the chief deputy sheriff, and the county solicitor had induced two co-defendants, drug addicts, to change their story and perjure themselves in return for narcotics furnished or promised them. Perhaps because Douglas, Townsend v. Sain, and the other landmark cases of March 18, 1963, were still germinating, no one at the hearing, even Pate, focused on indigency as an important issue in relation to Pate's right to appellate counsel. In affidavits filed in the habeas proceeding, Pate's attorneys deposed that their argument "consisted chiefly of the contention that due to the loss or destruction of the records of the original trial, Mr. Pate was deprived of a fair hearing since he could not search the trial record for error and there was not any way to determine whether or not he was presenting new evidence not available on the original trial".

The circuit court denied relief, entering findings of fact and conclusions of law. The court commended Miss Sullivan and Mr. Oliver for their "thorough and complete service" in "most adequately represent[ing]" the petitioner. In proper person, Pate moved for a rehearing, alleging that he had "new evidence",

affidavits in the possession of the Pardon Board at the time of the hearing. In these affidavits the co-defendants agreed that Pate's version of "the events as they happened was true and correct". In his motion the petitioner complained that the appointed counsel were ineffective because he was allowed to confer with them for only one hour prior to the hearing. The court denied the motion on the ground that it averred nothing new. In proper person, Pate appealed. The Alabama Court of Appeals affirmed. Pate v. State, Ala.App.1963, 154 So.2d 682; appeal dismissed, 275 Ala. 327, 154 So.2d 685. In August 1963, Pate filed a petition for a writ of habeas corpus in the Circuit Court of Montgomery County, Alabama. After a hearing, the circuit court denied this petition. Pate took no appeal from this judgment.

November 8, 1963, Pate sought habeas corpus in the United States District Court for the Middle District of Alabama. By then the Supreme Court had decided Douglas. The petition reiterates the contentions asserted in the coram nobis proceeding. But, *for the first time,* Pate clearly stated in his petition that "he was denied the right of appeal from his original trial *because of his indigent status* and official interference". Also for the first time, he alleged that he had been "denied a copy of his transcript of testimony of his original trial and he could not proceed any further in the state courts *because of his indigent status.*"

After reviewing the record in that proceeding, the able district judge declined to hold an evidentiary hearing. Relying on Townsend v. Sain, the district judge held that in the coram nobis proceeding the state court had "conducted a full and impartial hearing" upon "substantially the same questions now presented to this Court". The district court denied the petitioner's request for a certificate of probable cause. This Court entered an order granting the certificate of probable cause and appointing counsel to represent Pate.

## II.

The Supreme Court has "consistently held that federal court jurisdiction [in a habeas corpus proceeding] is conferred by the allegation of an unconstitutional restraint and is not defeated by anything that may occur in the state court proceedings". Fay v. Noia, 1963, 372 U.S. 391, 426, 83 S.Ct. 822, 842, 9 L.Ed.2d 837. Respect for American federalism, however, may make it unseemly for a federal habeas court to resolve a factual dispute the State has already adequately resolved. Accordingly, Brown v. Allen, 1953, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469, gives bare bones instructions to district courts to grant habeas hearings only when there are "unusual circumstances" or a "vital flaw" in the state proceeding. 344 U.S. at 463 and 506, 73 S.Ct. at 410 and 445.

Townsend v. Sain adds meat to the bare bones of Brown v. Allen:

"Where the facts are in dispute, the federal court on habeas corpus must hold an evidentiary hearing if the habeas applicant did not receive a full and fair evidentiary hearing in a state court, either at the time of the trial or in a collateral proceeding. In other words a federal evidentiary hearing is required unless the state-court trier of fact has after a full hearing reliably found the relevant facts." 372 U.S. at 313, 83 S.Ct. at 757.

Further particularizing the Court lists six criteria for the mandatory granting of hearings:

"We hold that a federal court must grant an evidentiary hearing to a habeas applicant under the following circumstances: If (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discov-

ered evidence; (5) the material facts were not adequately developed at the state-court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing." 372 at U.S. at 313, 83 S.Ct. at 757.

### III.

■ As this case illustrates, the State of Alabama provides machinery for post-conviction relief. See Tyson, Whither: On Habeas, 24 Ala. Lawyer 271 (1963). Under Townsend v. Sain, therefore, ordinarily a federal district judge need not grant an evidentiary hearing on a habeas corpus petition, if the Alabama state courts have already resolved the factual issues in a full and fair hearing. Here, however, examination of the coram nobis record binds us to doubts and fears that Pate may not have received the full measure of protection the Constitution affords to indigent prisoners.

According to Pate, he was convicted on the perjured testimony of co-defendants who served their interests by changing their story adversely to Pate's interests; now, in affidavits, these co-defendants admit their wrong-doing and clear Pate of any complicity. For this and other reasons, Pate *thought* that he had a chance to succeed on appeal. There is no doubt that confinement to prison handicapped his efforts, but the record shows that he attempted to find a *lawyer who would represent him on* appeal. And, if Pate is telling the truth, there is no doubt that the lack of a lawyer not only prevented an appeal in 1950 but resulted in Pate's being deprived of the benefit of a trial transcript in post-conviction proceedings in 1962.

■ ■ When appeal is a matter of right, as in Alabama, and when an issue on appeal may depend upon the evidence, an indigent defendant in a criminal case is entitled to a free transcript on appeal. Griffin v. People of State of Illinois, 1956, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891; Eskridge v. Washington

State Board of Prison Terms and Paroles, 357 U.S. 214, 78 S.Ct. 1061, 2 L. Ed.2d 1269. Draper v. State of Washington, 1963, 372 U.S. 487, 83 S.Ct. 774, 9 L.Ed. 899, recognizes that a "[s]tate need not purchase a stenographer's transcript in every case". But in Draper the Court emphasized that alternative methods of reporting trial proceedings to be permissible must "place before the appellate court an equivalent report of the events at trial from which the appellant's contentions arise". Lane v. Brown, 1963, 372 U.S. 477, 83 S.Ct. 768, 9 L.Ed.2d 892, Burns v. State of Ohio, 1957, 360 U.S. 252, 79 S.Ct. 1164, 3 L.Ed.2d 1209, and Smith v. Bennett, 1961, 365 U.S. 708, 81 S.Ct. 895, 6 L. Ed.2d 39 make clear that the Griffin principle is "not to be limited to direct appeals from criminal convictions, but extended alike to state post conviction proceedings. * * * even though the State has already provided one review on the merits". Lane v. Brown, 372 U.S. at 484, 83 S.Ct. at 773.

In Norvell v. State of Illinois, on facts in some important respects similar to the facts present here, the Supreme Court held that the unavailability of a trial transcript, through no fault of the State does not, in itself, deprive the defendant of any constitutional rights, so long as the State makes "some practical accommodation" to remedy the loss of the transcript. 373 U.S. at 424, 83 S.Ct. at 1368. Norvell was convicted of murder by an Illinois court in 1941, and sentenced to 199 years. He had a lawyer at his trial, but was unable to pay for a transcript and did not take an appeal. In 1956 Norvell moved for a new trial. The State was unable to furnish a transcript of the original trial: the court reporter had died and no one could read his shorthand notes. At a hearing held to reconstruct the record of the original trial, ten witnesses testified, but none remembered much about the evidence that had been introduced fifteen years earlier. The trial judge denied the motion for a new trial. The Supreme Court of Il-

linois upheld the decision of the trial court, and the United States Supreme Court affirmed on certiorari. See also United States ex rel. Smart v. Pate, Warden, 7 Cir., 1963, 318 F.2d 559.[2]

This case would come within the Norvell rationale, were it not for an important qualification contained in that opinion:

"If it appeared that the lawyer who represented petitioner at the trial refused to represent him on the appeal and petitioner's indigency prevented him from retaining another, we would have a different case." 373 U.S. at 422, 83 S.Ct. at 1368.

2. United States ex rel. Smart v. Pate, Warden, 7 Cir. 1963, 318 F.2d 559, holds that the inability of the court reporter to locate his shorthand notes and the inability of the state to furnish a transcript without any fault on its part are not in themselves enough to entitle the petitioner to habeas corpus relief. "[T]he inescapable facts inexorably require us to hold that the Fourteenth Amendment does not require the performance of the impossible." 318 F.2d at 562.

3. A second and closer look at this situation might raise doubts as to whether there is a valid basis for this presumption. Leon Polsky, the appellate counsel for the Legal Aid Society in New York, handles about four hundred appeals a year in both the state and federal courts. In a recent panel discussion of the Problems of Adequate Representations of Indigent and Other Defendants in Criminal Cases, held at the 1964 Judicial Conference of the Second Judicial Circuit, Mr. Polsky stated: "The first area [where there has been no progress to date insofar as affording representation] is that between trial and appeal. I think we all recognize that men have trial counsel, men have appellate counsel. But what happens in between? A man is convicted, say, in the Southern District of New York; he has ten days within which to file a notice of appeal and if he doesn't do it, he never will be in a position where he can get an appellate counsel. The present practice in not only the Southern District but in most districts is that when a trial counsel, if he is retained, loses his case and there is no fee to be had for an appeal, he leaves his client. Sometimes the attorney will file a notice

Norvell's lawyer did not remember whether he had been asked either to appeal or to move for a new trial, but stated that he gave the defendant "every constitutional guarantee that the law affords". 373 U.S. at 423, 83 S.Ct. at 1368. The Supreme Court assumed that Norvell had his lawyer's "continuing services for purposes of appeal and yet failed to pursue an appeal". Accordingly, the Court held that "where transcripts are no longer available, Illinois may rest on the presumption that he who had a lawyer at the trial had one who could protect his rights on appeal".[3] 373 U. S. at 424, 83 S.Ct. at 1369. *Here, we*

of appeal for his client and advise him what to do after that. In many cases he will not, and during this ten-day critical period many defendants are unrepresented, receive no advice about how to proceed further, or how to protect their rights. This, I think, is one of the more serious and glaring omissions in the present practice and present law on the question of representation of defendants, and this applies equally to indigent or non-indigent defendants. There have been two very recent proposals, so recent they almost undercut this point which I'm trying to make. First is a recent ruling of the Appellate Division, First Department, to which Mayor Wagner referred earlier, where the Appellate Division has ruled that it is the obligation of an assigned counsel to inquire of his client whether or not he wishes to appeal and that he must advise him in writing of his right to appeal, and it is counsel's obligation to file a notice of appeal on behalf of his client if the client so requests. Secondly, there is the recent proposed amendment to Rule 37 of the Federal Rules of Criminal Procedure which puts upon the district judge the obligation of advising every defendant convicted after trial of his right to appeal and of his right to proceed *in forma pauperis* if that is appropriate, and also to advise him of the mandatory time limits on filing a notice of appeal. If these two provisions go into effect, then this area which presently is completely left unguarded will be closed and will be covered. It is extremely important that a defendant be represented during this critical period when the decision is to be made as to whether or how a defendant should proceed in taking an appeal." 36 F.R.D. 129, 153–154.

*cannot rest comfortably on this presumption: Pate had no lawyer to "protect his rights on appeal"*. Norvell leads us, then, to Pate's contention that indigency deprived him not only of his right to the assistance of counsel and the right to a transcript, valuable in a belated appeal or in collateral proceedings, *but actually deprived him of the right to appeal.*

 Recent Supreme Court decisions agree that the Equal Protection Clause, and the Due Process Clause too, we believe, are violated when a State denies an indigent defendant any of the necessary incidents of appeal, including representation by counsel. Douglas v. People of State of California; Draper v. State of Washington. At some time and before some trial court, therefore, Pate is entitled to an evidentiary hearing to determine whether, in the language of Norvell, "the lawyer who represented petitioner at the trial refused to represent him on appeal, and petitioner's indigency prevented him from retaining another". Here, unless the record of the coram nobis proceeding shows that Pate had such a hearing in the state circuit court, he must now be given an opportunity to rebut "the presumption that he who had a lawyer at the trial had [or was able to get] one who could represent his rights on appeal".

### IV.

As to the denial of Pate's rights on appeal, the Alabama Circuit Court found as follows:

"The Court further finds that while the Petitioner's case was not appealed, that this was due to the failure of the Petitioner to employ counsel to perfect an appeal in his behalf; that the Petitioner had ample opportunity to employ either the counsel who represented him at the preliminary hearing and his original trial, the Honorable Jesse Willard Pienezza or others to perfect an appeal; and that Mr. Pate was in no way prevented in the exercise of his legal rights to perfect an appeal of his original conviction. Any contention regarding the adequacy of his counsel at his original trial or lack of opportunity to employ counsel to perfect an appeal is hereby rejected as not being substantial."

The district court below, in denying Pate's habeas corpus petition, stated that the record of that coram nobis proceeding

"reflects * * * that Pate was fully and fairly represented by retained counsel *at his original trial* and was fully and fairly represented by court-appointed counsel upon the coram nobis proceeding."

But the crucial questions relate to the *appeal*: During the six months Alabama allows for an appeal to be filed, was Pate so indigent that he could not retain counsel?[4] If so, did the State discriminate against Pate by failing to provide him with "adequate and effective appellate review"? "Destitute defendants must be afforded as adequate appellate review as defendants who have money enough to buy transcripts" and, we add, to employ appellate counsel. Griffin v. People of State of Illinois, 351 U.S. at 19, 76 S.Ct. at 591.

There is no dispute over the following facts. Pate asked his trial attorney to appeal the case and sent his wife and sister to Mr. Pienezza to ask that he perfect an appeal.[5] Whatever may

4. "Indigence is relative. The man who can raise $100 for a lawyer to represent him at trial often cannot match this with the $450 required for a transcript and the $400 and upwards required for appellate counsel." Higher averages are cited in Institute of Judicial Administration, Cost of Appeals Study (1954) Wilkes, Constitutional Rights of Convicted Indigents in State Criminal Proceedings since Griffin v. Illinois, 33 Temple L.Q. 123, 133 (1960).

5. Pate testified: "Then my wife left and went to Michigan and I wrote Mr. Pienezza a letter and I didn't get any reply to that. And I had my sister see Mr. Carvel Woodall in Tallassee because Mr. Woodall recommended Mr. Pienezza to my people, and my sister went to see Mr.

be the duty of a trial attorney to his convicted client, that duty was here diluted: Mr. Pienezza was recalled to military service and entered the Army two months after Pate's trial. At the hearing, Mr. Pienezza testified, "in all fairness to [Pate], on the day of his conviction he asked me to perfect an appeal for him".[6] Mr. Pienezza did not file a motion for a new trial and did not study the record for appealable errors, because he was not paid to do so; he considered that his duty ended when the trial ended. Pate asked two other lawyers to represent him on appeal, Mr. Carvel Woodall, who had taken over Pienezza's practice and Mr. Tom Young, now the County Solicitor. Mr. Woodall turned Pate down because he represented the store where the burglary was com-

Woodall and Mr. Pienezza had gone into the armed forces. She asked him about taking the case and he said he represented the Mill Company that owned the place of business that was burglarized and he couldn't take it. *And so, Your Honor, I wrote you a letter, and you didn't reply, I am in the death cell.* And I sat down and wrote Mr. Dan Boyd and *I wrote the Attorney General's office a letter and explained it to him.* I got a reply from the Assistant Attorney General named Mr. Hardin. In that letter he told me he had written you and instructed you to acknowledge my letter and advise me of my legal rights. I never got a reply to that letter. I understood I couldn't do nothing about this case until I started on it. Do you ever remember getting two letters from me?

"COURT: I receive so many letters.

\* \* \* \* \*

"A No, my sister saw me and went to get Mr. Pienezza to pay him to take an appeal.

"Q And that is when she found out he had gone—

"A Gone into the Armed Forces, yes, ma'am. And she talked to Mr. Woodall, and Mr. Woodall told her that he had gone into the Armed Forces.

"Q Was there anything further done for approximately six months after your trial by any of your people or yourself as far as retaining counsel for an appeal?

"A No, only that I wrote the Court, I wrote Judge Hooton, and the Attorney General.

"Q Did you try to contact any other attorneys aside from those?

"A No, ma'am. We can't write attorneys. You see they don't allow us to do that. It is just for the last few days, the last thirty days that we have been able to write attorneys there.

\* \* \* \* \*

"Q Tell us about that letter you wrote to Mr. Young?

"A I wrote Mr. Young a letter and asked him about appealing my case, that I wanted to appeal it, and Mr. Young replied to my letter and told me it was income tax time, and the less he would take my case for was $1000.00 because he was busy. And if he didn't receive the $1000.00 he wouldn't think any more about it.

"Q Was he, at that time, in private practice?

"A Yes.

"Q Do you now know that he is now Circuit Solicitor?

"A Circuit Solicitor.

"Q You did write him about taking an appeal for you and he did write you back?

"A Yes.

"Q So you were able to get in touch with a lawyer while you were at Kilby?

"A Yes, I got in touch with Mr. Young."

6. Pienezza testified: "Q Now, state whether or not Aubrey Pate or anyone in his behalf retained you as an attorney to prosecute an appeal for him?

"A They did not. But in all fairness to him, on the day of his conviction he asked me to perfect an appeal for him and his wife—I couldn't say that she was present. And within a day or so, she came down and talked with me in my office in Tallassee and I was never paid a fee in this matter and I had—I forget the number of times that I had been to Dadeville in connection with this case, and I actually don't have any independent recollection of the fee that I was paid, but I was not paid any fee to perfect an appeal for Mr. Pate. \* \* \* [H]e told me that he wanted to take an appeal and the only person that I ever saw or talked to was his wife, and all I remember about her was that she was a tall woman.

"Q Do you recall if you filed a motion for a new trial?

"A I did not.

"Q Is it true that that would indicate that you never considered really, an appeal in this case?

"A No, it just indicated that they didn't pay me any further fee."

mitted. Mr. Young wrote Pate a letter offering to take the case for a fee of one thousand dollars.[7] Pate did not answer the letter. Pate testified that after these efforts to find a lawyer proved to be unsuccessful he wrote to the trial judge (twice), to the Attorney General of Alabama, and to the County Solicitor explaining his inability to get a lawyer to represent him on appeal. Pate stated that he received an answer only from an Assistant Attorney General informing him that the Attorney General had written the trial judge suggesting that he advise Pate as to his legal rights.

The record is contradictory on the extent to which Pate was allowed to communicate with the world outside Kilby Prison, but there is no doubt that his activities were severely circumscribed. Mr. Pienezza and Mr. Young corroborated Pate's testimony on the subject of the appeal; Mr. Woodall had died while Pate was in prison. No one testified for the Attorney General as to whether his office had received a letter from Pate and had written to the circuit judge. Unhappily, Pate's trial judge was the same judge who presided at the coram nobis hearing.[8] He had no independent recollection of receiving Pate's letters; from the bench he said, "I receive so many letters".

After a careful reading of the record of the coram nobis hearing as a whole, we are forced to conclude that the record does not fairly support the circuit judge's finding that the petitioner had "ample opportunity to employ counsel" and that his case was not appealed "due to the failure of the petitioner to employ counsel." The circuit court never came to grips with the critical issue of indigency and its effect on Pate's right to counsel on appeal. In fact, the court made no specific finding on the question of indigency. The court seemed to assume that Pate was *not* indigent and had consciously waived his right to counsel. We must disagree therefore with the district court's conclusion that all of the issues Pate sought to raise in the habeas petition were fully and fairly presented and resolved in the coram nobis proceeding.

### V.

Norvell allows a State to "rest on the presumption that he who had a lawyer at the trial had one who could protect his rights on appeal."[9] 373 U.S. at 424, 83 S.Ct. at 1369. If, however, the prisoner here should succeed in rebutting that presumption, this case would be the "different case" Norvell cryptically noted but pretermitted.

The Supreme Court has held that an indigent defendant in an Alabama criminal prosecution has an absolute right to counsel at his arraignment, Hamilton v. State of Alabama, 1961, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114, and at trial, Gideon v. Wainwright, 1963, 375 U.S. 335, 82 S.Ct. 792, 9 L.Ed.2d 799.

---

7. Young testified: "No, sir, Mr. Pate did write me a letter and ask me about the possibilities of retaining me for an appeal in this case. I might sound like I am bragging a little bit, but Mr. Pate kind of bragged on me in the letter and I thought he was quite interested in hiring me and I figured that if he wanted me to work on the case—I did write him a letter and offered to try to effect an appeal for $1000.00, as I recall.

"Q And thereafter, what happened?

"A I believe I got no reply, as I recall, I got no reply whatsoever from my letter, and I figured he said that is more than a young buck lawyer is worth."

8. From the standpoint of reconstructing what took place at the original trial, this coincidence was in the interests of justice. With all due deference to the respected and distinguished trial judge, however, we note, "One salient point has been reiterated by judges and counsel alike: no trial judge wants to admit that a trial he conducted is defective". Wilkes, Constitutional Rights of Convicted Indigents in State Criminal Proceedings since Griffin v. Illinois, 33 Temple L.Q. 125, 133 (1960).

9. Query as to soundness of this presumption. See footnote 3.

Appeal is a different matter.[10] We take the position that when a defendant has retained counsel of his own choosing the State cannot be held to have violated the constitutional right of an indigent to counsel on appeal, unless the need for appellate counsel is brought home to the State, either by the defendant's request for appellate counsel or because a responsible State official has actual knowledge that the defendant is indigent and desires to appeal his conviction.[11]

This "nettlesome problem" is discussed in McIntosh v. Commonwealth, Ky.1963, 368 S.W.2d 331:

> "The right of counsel on appeal stands on a different footing, not only constitutionally but as a practical matter, from the right to counsel during earlier stages of a criminal proceeding. An appeal is not a prerequisite to the execution of a sentence, whereas the proceedings leading up to and including a judgment are. The right to a fair trial is primary and fundamental. A right of review is secondary, and exists only as an added safeguard against denial of the primary right. The obligation of the state to see that the defendant receives a fair trial is absolute; to provide him an appellate review is optional. That due process compels the court affirmatively to advise a defendant of his right to counsel at the trial stage does not lead to a conclusion that he must also be thus advised at the appellate stage. 'Equal protection' gives to the indigent defendant a right to counsel and to a transcript of the record on appeal if he requests it. In the absence of such a request it does not, in our opinion, oblige the court either to initiate an inquiry or to extend an invitation to appeal." 368 S.W.2d 331 at 336.

The facts in McIntosh differ radically from the facts as Pate presented them. In that case the defendant had capable court-appointed trial counsel but no appellate counsel. The Kentucky court noted: there was "no reason to believe from this record that [trial counsel] would not have prosecuted [the defendant's] appeal had he requested them to do so. At no time did he suggest to the trial court, which had provided their services to him, that they had withdrawn. * * * It was not incumbent on the trial court to wait on him at the county jail lest some need arise that might not otherwise be called to its attention. * * His testimony * * * contains no suggestion that during the time he remained in the jail at Richmond he made any attempt to send word to the trial judge apprising him of a need for counsel".

Horton v. Bomar, M.D.Tenn.1964, 230 F.Supp. 271, aff'd, 6 Cir. 1964, 335 F.2d 583, quoting McIntosh, emphasizes that mere failure of the court to appoint appellate counsel is not a violation of a defendant's constitutional rights. In that case, as in the case before this Court, the petitioner was represented at his state-court trial by retained counsel of his own choosing. After the trial, his attorney informed him that he would not represent him on appeal without payment of an additional fee of one thousand dollars. No appeal was perfected. The court held:

> "Refusal to appoint counsel is not alleged, thus it cannot be said that his constitutional rights were violated

10. The right to appeal from a criminal conviction is not required by due process. McKane v. Durston, 1895, 153 U.S. 684, 14 S.Ct. 913, 38 L.Ed. 597. But when an appeal is provided, it must meet the requirements of due process and equal protection. Dowd v. United States, ex rel. Cook, 1951, 340 U.S. 206, 71 S.Ct. 262, 95 L.Ed. 215; Griffin v. People of State of Illinois, supra.

11. Waiver of right to counsel is not involved in this case. "It is settled", of course, "that where the assistance of counsel is a constitutional requisite, the right to be furnished counsel does not depend on a request." Carnley v. Cochran, 1962, 369 U.S. 506, 513, 82 S.Ct. 884, 889, 8 L.Ed.2d 70. In Douglas as in this case, assuming that Pate testified truthfully, the defendant's request for counsel was refused.

by the mere failure of the court to appoint counsel to represent him on appeal. Where a defendant appears in court represented by competent, retained counsel the trial judge may reasonably assume that the rights of the defendant will be protected. The trial judge is not obliged to inquire into the continuing status of their relationship. At the very least petitioner should have made some effort to communicate to the trial judge the information that he wished to appeal but was unable to hire an attorney to assist him. * * * An attorney is under no obligation or duty to represent a client beyond the terms of their agreement. That he had undertaken to represent him at the trial does not imply that he had also agreed to represent him on appeal." Horton v. Bomar, 1964, 230 F.Supp. 271 at 272.

Other cases have touched on the problem. In Coffman v. Bomar, M.D.Tenn. 1963, 220 F.Supp. 343 the court held that a defendant's conviction was rendered void by reason of the denial of his right to appeal where his *court-appointed* attorneys failed to perfect an appeal within the time allowed under state law. Tennessee, however, as part of its system of appellate review to protect indigent defendants, has placed definite responsibilities in capital cases upon the trial judge, court-appointed counsel, the court reporter, and the clerk. "Thus, court-appointed counsel in such cases in a very real sense constitute a part of the system whereby the state in capital cases seeks to protect the indigent defendant with respect to an appellate review of his conviction.[12] Having in these cases specific statutory duties to perform in connection with an appeal not imposed upon attorneys generally, any default on their part in this respect must be attributed to the

state in testing the application of the Fourteenth Amendment." Coffman v. Bomar, 1963, 220 F.Supp. 343 at 348 and 349.

In United States ex rel. Boyance v. Commonwealth of Pennsylvania, E.D.Pa. 1963, 219 F.Supp. 12, the petitioner rejected an offer for the appointment of counsel and conducted his own defense in the state-court trial. He retained a lawyer to prosecute his appeal to the Superior Court. The lawyer withdrew before the decision on appeal, allegedly because of the defendant's indigency but failed to advise him of his withdrawal and was negligent in not notifying him of the Superior Court's decision. As a result, the defendant lost the opportunity to seek review by the Supreme Court of Pennsylvania. The Court held:

"Although indigency of the petitioner may have been the *occasion* for his counsel's withdrawal, the failure of his counsel to note his withdrawal or to transmit notice of the Superior Court's decision to the petitioner, if they occurred, were acts of neglect or default which are not peculiar to an indigent client. This is private conduct between the lawyer and client and is not State action. Finally, the alleged withdrawal of petitioner's counsel and the alleged failure of petitioner to receive notice of the Superior Court's decision were never brought to the attention of the State courts." United States v. Commonwealth of Pennsylvania, 1963, 219 F.Supp. 12 at 14.

Similarly, in Wampler v. Warden of Maryland Penitentiary, 1963, 231 Md. 639, 191 A.2d 594, 601, the court found "no occasion * * * to determine the * * * implications" of Douglas: "Where, as here, trial counsel was employed by the defendant himself, we do not see that any state action is involved

---

12. Usually, however, as one commentator has stated, that "*assigned* trial counsel is deemed to have completed his stint of public service when the defendant has been either acquitted or sentenced." This is "generally true throughout the country". Boskey, The Right to Counsel in Appellate Proceedings, 45 Minn.L.Rev. 783, 789 (1964). See also Special Committee to Study Defender Systems, Equal Justice for the Accused, 49, 50, 67 (1959).

in his refusal to enter an appeal, and hence we think that no question of a denial of due process or of equal protection under the Fourteenth Amendment is here presented by such refusal." 191 A.2d 594 at 601.

In State ex rel. Dych v. Bomar, Tenn. 1964, 378 S.W.2d 772 the defendant's retained counsel informed the defendant after conviction that he would not appeal the case unless he received an additional fee. The defendant made no attempt to communicate to the trial court his desire to have the case appealed and to have appellate counsel appointed. The Court denied habeas relief:

> "In Douglas, the petitioners had requested the court to appoint counsel to assist them in perfecting an appeal. There was no such request in the instant case, nor is there any evidence in this record that the trial court otherwise knew that the appellant wanted to appeal his case, but did not have sufficient funds to retain an attorney for that purpose. We do not think that the principle laid down in the Griffin and Douglas cases applies where the defendant is told by his retained counsel that he is not going to appeal his case, and the defendant makes no attempt to communicate to the trial court his desire to have his case appealed and his desire to have counsel appointed to assist him. In our opinion the defendant must assume the initiative. In this we are supported by the decision of the Supreme Court of Kentucky in the case of McIntosh v. Commonwealth. * * * [In Coffman v. Bomar] Judge Miller found that action on the part of state officials or state agents had deprived the petitioners of their right of appeal. There is no such 'state action' in the instant case." State ex rel. Dych v. Bomar, 1964, 378 S.W.2d 772 at 774 and 775. See also Tucker v. United States, 9 Cir. 1962, 308 F.2d 798.

Putting the cases together, we extract the following principles as controlling: At this point in the development of the law, an indigent's right to appellate counsel, which Douglas recognizes as an "absolute" right guaranteed under both the Equal Protection Clause and the Due Process Clause, is not absolute in the sense that the right to trial counsel is absolute. It is not necessary that the trial judge initiate action toward the appointment of appellate counsel by advising a convicted person of his rights or by making any inquiry as to his indigency, although such minimal action at the time of sentencing seems highly desirable. Compare the right of a defendant in a federal court under Rule 37(a) (2), Fed.R.Crim.P. For a petitioner to be entitled to post-conviction relief, it is not enough to show that indigency occasioned the petitioner's inability to employ counsel or to appeal; the petitioner must show that the State deprived him of his Fourteenth Amendment rights. State action is shown when a responsible official in the State's system of justice rejects a request for counsel or fails to take proper steps toward appointment of counsel for a convicted defendant when he has knowledge of the defendant's indigency and desire for appellate counsel. When an accused person retains counsel on the original trial, the State may rely on the presumption that the accused's lawyer will protect his client's rights on appeal. But that presumption is rebuttable.

Here, if Pate is telling the truth, he rebutted the presumption. If indeed Pate wrote the County Solicitor, wrote the Attorney General of Alabama, and twice wrote the trial judge, telling of his difficulties and asking for the assistance of appellate counsel, he did all, and perhaps somewhat more, than was necessary to put in motion the machinery for adequate review of an indigent's conviction. Cf. Miller v. Bomar, M.D.Tenn. 1963, 230 F.Supp. 204.

Like Gideon and Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, Douglas is silent on the question of its retrospective effect. In Doughty v. Maxwell, 1964, 376 U.S. 202, 84 S.Ct. 702, 11 L.Ed.2d 650, in a short per curiam

opinion the Supreme Court reversed a state court conviction where the accused had failed to request counsel when pleading guilty; Doughty was convicted two years before Gideon's 1961 conviction. United States ex rel. Durocher v. La-Valle, 2 Cir. 1964, 330 F.2d 303, cert. den'd 377 U.S. 998, 84 S.Ct. 1921, 12 L.Ed.2d 1048, relying on Doughty v. Maxwell, applied Gideon where a defendant pleaded guilty without being apprised of his right to counsel.[13] This Court has applied Mapp prospectively, and distinguished it from Griffin where the object of the ruling was to provide fairness in the trial itself rather than to provide a deterrent to unlawful police action. United States ex rel. Linkletter v. Walker, 5 Cir. 1963, 323 F.2d 11.

In a recent comment the author suggests that "retroactivity" in habeas proceedings is an illusion:

> "The illusion of 'retroactivity' is created because the judicial inquiry into the legality of detention under a final conviction leads necessarily to a review of the conviction (res judicata being inapplicable), which may have been valid under the law at the time it was rendered. * * * Despite the necessary involvement of what happened at a long-ago prosecution, the theory of habeas corpus makes the question for the court the present constitutionality of presently continuing detention. The petition is filed against the warden who at this very hour is confining the petitioner in the penitentiary." Meador, Habeas Corpus and the "Retroactivity" Illusion, 50 Va.L.Rev. 1115, 1119 (1965).

In Douglas the Court agreed with Justice Traynor's comment[14] that the "[d]enial of counsel on appeal [to an indigent] would seem to be a discrimination at least as invidious as that condemned in Griffin".[15] In the light of Douglas's recognition of an indigent's "absolute" right to counsel on appeal and considering the dissenting justices' position that the apposite constitutional clause is the Due Process Clause, we hold that Douglas must be applied retrospectively. "The aim which justifies the existence of habeas corpus is not fundamentally different from that which informs our criminal law in general, that it is better that a guilty man go free than that an innocent one be punished. * * * What is involved, however, is not just the enforcement of defined standards. It is also the creative process of writing specific content into the highest of our ideals." Schaefer, Federalism and State Criminal Procedure, 70 Harv. L.Rev. 1, 25 (1956).

\*　　\*　　\*　　\*　　\*　　\*

In sum, we affirm the judgment of the district court except as it relates to the petitioner's contentions that he was deprived of the assistance of appellate counsel and of his right to appeal. We remand the case for an evidentiary hearing on the following questions:

(1) Was the petitioner an indigent during the period Alabama allows for perfecting an appeal?

(2) If petitioner was indigent, was his indigency the cause of his not obtaining appellate counsel?

(3) Did the petitioner inform the trial judge, the State Attorney General, the county solicitor,

---

13. The late Judge Clark, speaking for the court, considered it significant that the Supreme Court elected to overrule Betts v. Brady, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595, in a habeas corpus case. 330 F.2d at 310. However, in Gideon twenty-two states as amici curiae unsuccessfuly urged the Court to deny retrospective effect to Gideon. Before Doughty was decided the Court had remanded "for further consideration in the light of Gideon" a number of right-to-counsel cases involving pre-Gideon convictions. These were interpreted as a "clear, if inexplicit indication" of retrospective application. 330 F.2d at 311. See Note, Durocher v. LaValle, 43 Tex.L.Rev. 243, 245 (1964).

14. In People v. Brown, 1960, 55 Cal.2d 64, 71, 9 Cal.Rptr. 816, 820, 357 P.2d 1072, 1076 (concurring opinion).

15. 372 U.S. at 355, 83 S.Ct. at 815.

or any other responsible State official of his inability to obtain appellate counsel because of his indigency?

If the district court should conclude that the petitioner was unconstitutionally deprived of appellate review of his conviction, the question will arise as to the appropriate order to be entered. At this late date and because of the lack of a transcript of the testimony there is no way to provide the appropriate relief—adequate appellate review of Pate's conviction. In the circumstances of this case, we suggest that the district court enter an order similar to the order Judge Miller entered in Coffman v. Bomar. In that case Judge Miller said:

"[T]he Court is of the opinion that the proper course to be taken by this Court is to award the petitioner the maximum relief that he could have obtained if his appeal had been properly perfected and he had been successful in prosecuting it. This can be accomplished by directing that the petitioner be accorded a new trial, if the state desires to retry him for the offense charged in the first count of the indictment, and otherwise that he be released from custody. Such a disposition will vindicate the petitioner's constitutional rights and operate to correct the constitutional error committed against him. As pointed out in Dowd v. United States ex rel. Cook, supra, '[t]he District Court has power in a habeas corpus proceeding to "dispose of the matter as law and justice require." 28 U.S.C., § 2243.'

"It is therefore directed that an order be submitted to the Court adjudging that the petitioner, Boyd Coffman, be released from the further custody of the respondent, Lynn Bomar, Warden of the Tennessee State Penitentiary at Nashville, and delivered to the custody of the Sheriff and District Attorney-General for Washington County, Tennessee, if said state officials intend to retry petitioner for the offense out of which the instant proceeding arose. In the event the said state officials do not so intend to retry the petitioner for said offense, it is directed that he be released from further custody forthwith." 220 F. Supp. 343 at 349.

Accordingly, the judgment is affirmed in part and reversed in part, and the case is remanded to the district court for proceedings consistent with this opinion.