The **PEOPLE OF the UNITED STATES** of America ex rel., Edward **MITCHELL**, Relator,

v.

**Edward M. FAY, Warden of Green Haven Prison, Stormville, New York,** Respondent.

United States District Court
S. D. New York.
May 6, 1965.

**166**

Edward Mitchell, pro se.

Louis J. Lefkowitz, Atty. Gen. of New York, for respondent, Michael H. Rauch, Deputy Asst. Atty. Gen., of counsel.

WYATT, District Judge.

This petitioner (sometimes for convenience "Mitchell") for a writ of habeas corpus (28 U.S.C. § 2241) is presently confined in Green Haven Prison, Stormville, Dutchess County, New York, serving a sentence to a term of imprisonment of from ten to twenty years. The sentence was imposed on Mitchell by the Nassau County Court (Collins, J.) on November 17, 1952 after conviction by a jury of assault in the first and second degrees (New York Penal Law, McKinney's Consol.Laws, c. 40, §§ 240, 242).

The present petition is presented by Mitchell in forma pauperis under authority of an order of Judge Murphy filed October 29, 1964.

Mitchell was represented at his trial in the State court by assigned counsel, assigned on the basis of indigency. Mitchell so states in his sworn petition and there is no denial for the State.

When Mitchell was being sentenced in the State court, assigned counsel was present. The stenographic minutes include the following colloquy (pages 1, 2):

"THE CLERK: Have you any legal cause to show why sentence should not be imposed?

"THE DEFENDANT: I have.

"THE CLERK: Address your remarks to the Court, please.

"THE DEFENDANT: Your Honor, I am innocent of this assault charge. I have three witnesses that will testify to that effect. As an innocent man I don't think I ought to be sentenced justifiably.

"THE COURT: Is there anything further you wish to tell the Court?

"THE DEFENDANT: No. Judge, your Honor.

\*   \*   \*   \*   \*   \*

"THE COURT: \* \* \* Now, Edward Mitchell, is there anything further you care to say to the Court before the Court makes a final disposition?

"THE DEFENDANT: I would love to have an appeal, but I have no means. I have no way of doing it, so I have to take it."

Sentence was then pronounced.

The minutes show that nothing further was said on the subject of appeal by Court, counsel or anyone else.

Mitchell did not appeal. He was not assigned counsel for an appeal and was obviously ignorant of any steps which an indigent might take in New York to secure an appeal.

After serving his sentence for many years and perhaps stimulated by Douglas v. People of State of California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (March 18, 1963), rehearing denied 373 U.S. 905, 83 S.Ct. 1288, 10 L.Ed.2d 200 (April 29, 1963), Mitchell applied to the State court for a writ of error coram nobis for failure of the State to make possible an appeal from his November 17, 1952 judgment of conviction. His application was denied without hearing and without opinion by order dated June 14, 1963, which order was unanimously affirmed by the Appellate Division. People v. Mitchell, 20 A.D.2d 722, 247 N.Y.S.2d 499 (2d Dept. February 17, 1964). Mitchell avers that leave to appeal to the New

York Court of Appeals was denied on May 18, 1964 by Chief Judge Desmond. There is no denial for the State.

■ While the Appellate Division did not state its reasons for withholding coram nobis relief, it cited People v. Kling, 19 A.D.2d 750, 242 N.Y.S.2d 977 (2d Dept. 1963). This decision was affirmed (4–3) ten days after the Appellate Division decided petitioner's appeal. People v. Kling, 14 N.Y.2d 571, 248 N.Y.S.2d 661, 198 N.E.2d 46 (February 27, 1964). Under the Kling decision and others, the law of New York appears to be this: assigned counsel to an indigent defendant in the trial court has no duty respecting an appeal in a non-capital case, either to advise the defendant or to file a notice of appeal. Counsel on the appeal of an indigent defendant can only be assigned by the Appellate Division and only *after* a proper notice of appeal has been filed. See, for example, Bloeth v. Cyrta, 21 A.D.2d 979, 243 N.Y.S.2d 490 (2d Dept. 1963); People v. Ashe, App. Div., 164 N.Y.S.2d 842 (4th Dept. 1957).

■ In any event, it seems clear that Mitchell has exhausted his presently available State remedies within the meaning of 28 U.S.C. § 2254 because he has presented his federal constitutional claim (the same claim that is here presented) to the sentencing court in a collateral proceeding and appealed from its denial on the merits. See generally Fay v. Noia, 372 U.S. 391, 420–422, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

The claim is thus reached that the constitutional rights of petitioner were violated in that neither the trial court, the court clerk, nor Mitchell's assigned trial counsel—all of whom were aware of his desire to have an appeal—filed a notice of appeal for him, or saw that counsel was assigned to him for an appeal, or even informed him of a procedure for an appeal as a poor person.

■ There is no need for any evidentiary hearing because the facts are not in dispute; there are no "contested factual issues". Townsend v. Sain, 372 U.S. 293, 310, 312, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

■ While a state is not required by the Fourteenth Amendment to provide appellate courts or for any appeal (Griffin v. People of State of Illinois, 351 U.S. 12, 18, 76 S.Ct. 585, 100 L.Ed. 891 (1956)) it is now familiar law that if a state does provide appellate review, the right to appeal, as well as the state procedures on appeal, becomes constitutionally protected (Griffin, above, at 18, 76 S.Ct. 585).

■ At least since Griffin, it has been clear that a state cannot, in the administration of its appellate procedures, discriminate on the basis of the financial condition of the defendant; "[d]estitute defendants must be afforded as adequate appellate review as defendants who have money * * *." 351 U.S. at 19, 76 S. Ct. at 591. In Griffin, the indigent's right to a free transcript was in issue.

In Douglas v. People of State of California, above, by asserting (372 U.S. at 355, 83 S.Ct. at 815) that the denial of counsel on appeal to indigents is "a discrimination at least as invidious" as the denial of free transcripts, the Supreme Court held that an indigent defendant is entitled to the benefit of assigned counsel to prosecute an appeal given him by the state as of right. Mr. Justice Douglas, speaking for the majority of the Court, said (372 U.S. at 357–358, 83 S. Ct. at 817):

> "There is lacking that equality demanded by the Fourteenth Amendment where the rich man, who appeals as of right, enjoys the benefit of counsel's examination into the record, research of the law, and marshalling of arguments on his behalf, while the indigent * * * is forced to shift for himself. The indigent, where the record is unclear or the errors are hidden, has only the right to a meaningless ritual, while the rich man has a meaningful appeal."

■ Douglas v. People of State of California therefore affirms that an indi-

168

gent defendant has a constitutional right to the assistance of counsel on appeal.

■ The conviction of petitioner was in 1952; Douglas was decided in 1963. Does it have retrospective effect? This Court concludes that it does.

The Supreme Court, in at least three cases subsequent to Douglas, has reversed with a citation to Douglas state court convictions had before Douglas. All three were short, per curiam decisions. Mr. Justice Harlan dissented in all three because he felt that the cases should be set for argument of the question of the retrospective effect of Douglas. Smith v. Crouse, 378 U.S. 584, 84 S.Ct. 1929, 12 L.Ed.2d 1039 (1964); Shockey v. Illinois, 375 U.S. 22, 84 S.Ct. 83, 11 L.Ed.2d 43 (1963); Daegele v. Kansas, 375 U.S. 1, 84 S.Ct. 89, 11 L.Ed.2d 44 (1963). This is a strong indication that Douglas v. People of State of California is to be given retrospective effect. The Court of Appeals for the Fifth Circuit has recently so held. Pate v. Holman, 341 F.2d 764 (1965).

Our Court of Appeals has given retrospective effect to Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). United States ex rel. Durocher v. LaVallee, 330 F.2d 303 (2d Cir.) cert. denied, 377 U.S. 998, 84 S.Ct. 1921, 12 L.Ed.2d 1048 (1964). The reasons for such a holding are the same in regard to the Douglas decision:

"We do not deal here, however, with considerations of *res judicata* and vested rights, but with the question whether, consonant with our society's conceptions of due process and general constitutional law, we could deny the constitutional right enunciated in Gideon to those who happened to be tried before the decision was handed down. Thus to hold would be to assign a lower constitutional status to pre-Gideon prisoners who were denied the right to counsel, a right so 'fundamental and essential to a fair trial' that it is made obligatory upon the States by the Fourteenth Amendment * * *."

(United States ex rel. Durocher v. LaVallee, above, 330 F.2d at 312).

■ The question here thus becomes a narrow one: does the New York decisional rule as to indigent appeals— namely, that trial counsel assigned to an indigent in a non-capital case has no responsibility for advising as to an appeal or filing a notice of appeal while the indigent may not secure counsel for an appeal except from the appellate court after timely filing of a notice of appeal—violate the constitutional rights of convicted indigents? This Court concludes that it does.

The lack of the benefit and assistance of counsel at the critical stage between judgment of conviction and the running of the time to appeal can in many instances, as it obviously did in the case at bar, effectively destroy the right of an indigent to appeal. Of what use is it to say that an indigent defendant has the right to counsel on appeal if at the most crucial time—the period during which the notice of appeal must be filed— the indigent "is forced to shift for himself" (Douglas v. People of State of California, above, 372 U.S. at 358, 83 S.Ct. at 817)?

The importance of the assistance of counsel in this crucial time was ably discussed by a speaker experienced in this field before the 1964 Judicial Conference of the Second Circuit:

"I think we all recognize that men have trial counsel, men have appellate counsel. But what happens in between? * * * Some times the [trial] attorney will file a notice of appeal for his client and advise him what to do after that. In many cases he will not, and during this * * critical period many defendants are unrepresented, receive no advice about how to proceed further, or how to protect their rights. This, I think, is one of the more serious and glaring omissions in the present practice and present law on the question of representation of defendants, and this applies equally to indigent

or non-indigent defendants. * * * It is extremely important that a defendant be represented during this critical period when the decision is to be made as to whether or how a defendant should proceed in taking an appeal." 36 F.R.D. 129, 153–154.

That the New York decisional rule is a matter of grave concern is shown not only by the number of dissents in the appellate courts but by new Rule VI, Part 2, made effective for New York and Bronx Counties by the Appellate Division, First Department, on September 1, 1964 (Cahill-Parsons New York Civil Practice, 3d ed., 1964 Supplement, p. 183). That Rule imposes upon trial counsel assigned to an indigent defendant in a criminal action the duty, immediately after sentence (a) to advise defendant in writing of his right to appeal, time limit, procedure, and how to obtain a transcript and (b) to find out if defendant wants to appeal and, if so, to serve and file the notice of appeal. Only after so doing are his duties completed as assigned counsel.

The opinion of Judge Wisdom in Pate v. Holman, above, is persuasive. The Court in Pate v. Holman dealt with a conviction after trial during which defendant was represented by retained counsel, paid a modest fee. There was no appeal and years later on petition for a writ of habeas corpus defendant-petitioner averred that he was denied an appeal because of his indigent status. The Court expressed its conclusion as follows (341 F.2d at 773):

"We take the position that when a defendant has retained counsel of his own choosing the State cannot be held to have violated the constitutional right of an indigent to counsel on appeal, unless the need for appellate counsel is brought home to the State, either by the defendant's request for appellate counsel or because a responsible State official has actual knowledge that the defendant is indigent and desires to appeal his conviction."

The case was remanded for an evidentiary hearing on these questions (341 F. 2d at 776–777):

"(1) Was the petitioner an indigent during the period Alabama allows for perfecting an appeal?

"(2) If petitioner was indigent, was his indigency the cause of his not obtaining appellate counsel?

"(3) Did the petitioner inform the trial judge, the State Attorney General, the county solicitor, or any other responsible State official of his inability to obtain appellate counsel because of his indigency?"

The opinion established that if these questions were answered by the District Court in the affirmative, the petition should be granted.

In the petition at bar, the analogous questions must all be answered in the affirmative without a hearing.

That Mitchell was indigent is plain from the record.

It is equally plain that in open court he made known to the judge presiding and to assigned counsel that he wanted to appeal and was indigent.

Failure to make an appeal available to him was, under the circumstances, a denial by the State of his rights under the Fourteenth Amendment.

By order of this Court filed April 19, 1965 Professor Charles E. Ares was assigned as counsel to represent petitioner in this Court on this petition. The Court has been able to reach its decision without requiring the assistance of assigned counsel (who is hereby relieved as such) but desires to express its appreciation to Professor Ares for undertaking the assignment.

For the reasons set forth, this petition for a writ of habeas corpus is granted, the writ will be issued, and the petitioner ordered to be discharged from custody. If the State desires to appeal, a certificate of probable cause is hereby issued. 28 U.S.C. § 2253.

Issuance of the writ will be stayed and an order discharging petitioner from custody will be withheld until May 21, 1965.

If on or before May 21, 1965 the State submits proof that an appeal from this order has been taken to the Court of Appeals for the Second Circuit, or that a new trial of petitioner has been scheduled, or that provision has been made for an appeal by petitioner from the judgment of conviction of November 17, 1952, the writ will not issue nor an order made discharging petitioner from custody until the State is heard further.

If no such proof is submitted by the State on or before May 21, 1965, the writ will issue and the petitioner discharged from custody.

So ordered.