H. L. Manning, et al v. State of Arkansas

5-5412 442 S.W. 2d 207

Opinion Delivered May 26, 1969
[Rehearing denied July 14, 1969.]

*Howell, Price & Worsham* for appellants.

*Joe Purcell,* Atty. Gen. and *Don Langston,* Ass't. Atty. Gen. for appellee.

CARLETON HARRIS, Chief Justice. On October 17, 1967, appellants, H. L. Manning, Arthur Lee Manning and Eddie Manning, were convicted of the crime of rape, and sentenced to 40 years imprisonment. They were represented by counsel who had been retained by their mother. On November 16, 1967, appellants filed a motion for a new trial, which was denied on November 20, appeal granted, and appellants given 45 days for preparation of the Bill of Exceptions. The appeal was not perfected.[1] A petition was filed on February 14, 1968, with the trial court by the appellants, which asserted that they were without counsel and were paupers; they asked that the court appoint an attorney and order a transcript prepared, free of charge, for purposes of an appeal. The court found that appellants had been represented by an attorney, E. V. Trimble; that the time for an appeal

---

[1] Ark. Stat. Ann. § 43-2701 (Repl. 1964) provides as follows: "No appeals to the Supreme Court in a criminal case shall be granted, nor writs of error issued, except within sixty (60) days after rendition of the judgment of conviction in the case except that the trial judge with his discretion may by order entered prior to the expiration of said sixty (60) days extend the time for not to exceed an additional sixty (60) days."

had long since expired, and no ground had been alleged under Criminal Procedure Rule No. 1² which would subject the sentence rendered to collateral attack. On April 22, 1968, the appellants wrote the Circuit Judge, stating that their attorney had lost interest in their case, and they requested that an attorney be appointed to proceed under Rule 1. Two attorneys of the Pulaski County Bar were appointed to represent them, and a formal motion was filed by these attorneys on May 30, asking that appellants be allowed to appeal their conviction in *forma pauperis*. It was asserted that the action of defense counsel in "abandoning" appellants' cause, and the action of the court in denying legal counsel and a transcript, were a violation of their constitutional rights. Upon hearing, the Pulaski Circuit Court (First Division) denied the relief sought and entered judgment accordingly. From such judgment, appellants bring this appeal.

The petition filed by appellants has been given careful consideration, and we have reached the conclusion that no showing has been made which would entitle them to the relief sought. It is apparent from the record that the Manning Brothers were aware that E. V. Trimble, the attorney employed by their mother, and who had conducted their defense at the trial, was not going to appeal the case, and, though not entirely clear, it appears that appellants were cognizant of this fact while they were still incarcerated at the jail, and long before appeal time had expired. When Arthur Manning was asked if it were true that he knew before he left the Pulaski County Jail that the case was not going to be appealed by Trimble, he replied, "I didn't know for sure though." All agreed that they wanted to obtain the services of a Little Rock lawyer, Allen Dishongh, to represent them, and H. L. Manning stated that he talked with Dishongh

---

²This rule, adopted by the court on October 18, 1965 (amended on April 10, 1967) sets out the grounds for, and procedure to be followed in, petitions for post-conviction relief.

1016

over the telephone. This contact occurred between October 17, 1967 (date of the convictions) and December 1, 1967. Though Dishongh refused employment, the brothers made no effort to communicate with the trial judge, or to advise him or any other official, that they were paupers, financially unable to employ counsel, and desired that counsel be appointed to represent them on an appeal. In fact, it appears from the record that appellants have but little use for court appointed lawyers. H. L. Manning testified, ''We didn't want no state lawyer.''[3]

This court, long before *Griffin* v. *Illinois*, 351 U.S. 12, 100 L. ed. 891, 76 S. ct. 585 (1955), and *Douglas* v. *California*, 372 U.S. 353, 9 L. ed. 811, 83 S. ct. 814, reh den 373 U.S. 905, 10 L. ed. 2d 200, 83 S. ct. 1288 (1963), permitted paupers to appeal their convictions, a full transcript of the proceedings at the trial being furnished without cost, with court appointed counsel directed to handle such appeals. We have also ordered, under Criminal Procedure Rule 1 appeals, that a full transcript of the original trial proceedings be prepared without charge to the defendant, and counsel appointed to belatedly appeal a conviction. See *Jackson* v. *Bishop*, 240 Ark. 1011, 403 S.W. 2d 94. However, there was a distinct difference in *Jackson* and the present case, in that Jackson made known his indigency, even before the original trial, and was represented there by court appointed counsel.

The case of *Swenson* v. *Bosler*, 386 U.S. 258, 18 L. ed. 2d 33, 87 S. ct. 996 (1967), is not applicable to the present contention. There, Missouri had no rule requiring appointment of appellate counsel for indigent defendants, and if trial counsel withdrew from the case, the Supreme Court of that state would require preparation of the transcript for appeal, but would then consider the

---

[3]This remark was made with reference to their trial; Manning was rather critical of the lawyer selected by his mother.

questions raised on the basis of *pro se* briefs by the defendant, or on no briefs at all. The United States Supreme Court held that this procedure violated Swenson's Fourteenth Amendment rights, and we certainly agree with that decision. The court concluded its per curiam order with these words:

> "When a defendant whose indigency and desire to appeal are manifest does not have the services of his trial counsel on appeal, it simply cannot be inferred from defendant's failure specifically to request appointment of appellate counsel that he has knowingly and intelligently waived his right to the appointment of appellate counsel."

Here, it is evident that the need for appointive counsel was not manifest to the trial court, nor does the record indicate that appellants, or any one of them, made known a need for court appointed counsel to any official representing the state. Since the attorney who represented appellants at the trial did not advise the court, within appeal time, that he was not going to go any further with the case, how was the court to know that there was need for an appointment to be made? The United States Court of Appeals for the Sixth Circuit employed pertinent language for this type of situation in *Horton v. Bomar*, 335 F. 2d 583 (6th Cir. 1964), where a petition for post-conviction relief was denied:

> "Finally it is claimed on behalf of the appellant that he was denied due process and equal protection of the law in violation of the Fourteenth Amendment to the Constitution of the United States for the reason that he was not provided with counsel to prosecute an appeal from his conviction in the state court. The appellant's trial counsel apparently would not represent him in an appeal without the payment of an additional fee. * * * The appellant does not claim that he ever advised the trial judge that he was unable to employ a lawyer to prosecute

an appeal or that he made a request for the appointment of counsel. It was well said by the District Judge, 'The trial judge is not obliged to inquire into the continuing status of their relationship.' ''

The Federal Courts have also pointed out that, for a petitioner to be entitled to post-conviction relief, it must be shown that a responsible state official rejected the request for counsel. In *Weatherman* v. *Peyton*, 287 F. Supp. 819 (D.C. W. Va. 1968), the court said:

"For petitioner to be entitled to post-conviction relief, because of alleged violation of a constitutional right, it is not enough to show that he was indigent or that his privately employed counsel was negligent in not perfecting an appeal. The petitioner must show some state action. 'State action' is shown when a responsible official in the State's system of justice rejects a request for counsel for a convicted defendant when he has knowledge of the defendant's indigency and desire for appellate counsel. When an accused person retains counsel on the original trial the State may rely on the presumption that the accused's lawyer will protect his client's rights on appeal."

See also *United States* v. *Overlade,* 149 F. Supp. 425 (D.C. Ind. 1957). This view has also received appellate approval. In *Pate* v. *Holman,* 341 F. 2d 764 (5th Cir. 1965), the court said:

"We take the position that when a defendant has retained counsel of his own choosing the State cannot be held to have violated the constitutional right of an indigent to counsel on appeal, unless the need for appellate counsel is brought home to the State, either by the defendant's request for appellate counsel or because a responsible State official

has actual knowledge that the defendant is indigent and desires to appeal his conviction.'"[4]

In the case before us, the record clearly shows that no action of the state has prevented appellants from being afforded full protection for their constitutional rights. Surely, in holding that a convicted indigent could assert the violation of constitutional rights in a post-conviction hearing, it was not the intention of the United States Supreme Court to entirely sweep away state statutory law setting out orderly procedures, including that of appeal, unless such statutes offend the exercise of individual rights guaranteed by the Constitution.

It might also be said that appellants, though contending that there were errors in the trial proceedings (in a letter of April 22, 1968, to the trial court), and that constitutional rights were violated, do not point out any asserted error, or specific instance of a constitutional violation. In *Jackson v. Bishop, supra,* cited by appellant as authority applicable to the present petition, Jackson, in his Rule 1 petition seeking relief, alleged three specific violations of his constitutional rights,[5] and, as

---

[4]The case was reversed with directions that an evidentiary hearing be held to determine if Pate had (as he claimed) written the County Solicitor, the Attorney General of Alabama, and twice written the trial judge, advising of his difficulties, and asking for the assistance of appellate counsel.

[5]"1. That the rights of the appellant under the Fifth and Fourteenth Amendments to the Constitution of the United States were violated by introduction of alleged oral confessions made prior to advice to the appellant of his constitutional right to remain silent and to be represented by counsel.

"2. The rights of the appellant under Section 15 of Article 2 of the Constitution of the State of Arkansas and the Fourth Amendment of the United States Constitution were violated by the illegal search of his motel room and the use of evidence so obtained against him at the trial.

"3. That the court erred in admitting a .38 caliber Smith & Wesson pistol into evidence without proper foundation, and the

previously mentioned, was represented in the trial court by counsel appointed by that court. Here, only conclusions are set out, without any mention whatever of the acts relied upon for the conclusions reached.

Summarizing, appellants sought to secure the services of another attorney to replace Trimble in taking their appeal; though unsuccessful, no effort was made to contact any other attorney, or, if they were without funds, to make this condition known to the trial court. Actually, the testimony reflects that they were apparently rather confident that funds for the employment of an attorney would be furnished by the employer of an older brother (a brother not involved in this case). It appears that it was only after this effort had failed, and appellants had been sent on to the penitentiary, that they advised the court that they were paupers, and would like to have counsel appointed to represent them. There is absolutely no evidence that any state official was aware that retained counsel did not represent appellants until long after the time for appeal had expired, nor is there any indication that the state had knowledge of appellants' indigency and need of appellate counsel until appeal time had terminated.

It follows that the judgment of the trial court should be, and hereby is, affirmed.

It is so ordered.

BYRD and HOLT, JJ., dissent.

---

value of this pistol was absolutely necessary to establish the minimum of $35.00 in value of articles taken to justify a charge of grand larceny."