**Archie Harold DAVIS, Petitioner-Appellant,**

v.

**Lynn BOMAR, Warden, State Penitentiary, Nashville, Tennessee, Respondent-Appellee.**

**No. 15921.**

United States Court of Appeals
Sixth Circuit.

April 20, 1965.

Charles B. Ginocchio (court appointed), Cincinnati, Ohio, for appellant.

Henry C. Foutch, Asst. Atty. Gen., Nashville, Tenn., for appellee. George F. McCanless, Atty. Gen., and Reporter of Tennessee, of counsel.

Before EDWARDS, Circuit Judge, ARTHUR M. SMITH, Associate Judge,* and McALLISTER, Senior Circuit Judge.

McALLISTER, Senior Circuit Judge.

This is an appeal from an order of the District Court denying a petition for a writ of habeas corpus.

Archie Harold Davis pleaded guilty to a charge of first degree murder in the State of Tennessee and, in September 1958, was sentenced to serve twenty-one years in the state penitentiary.

Appellant thereafter filed a petition for a writ of habeas corpus in the state trial court, which was denied; and his appeal from the order of denial was dismissed by the Supreme Court of Tennessee.

Appellant subsequently filed a petition for a writ of habeas corpus in the United States District Court for the Middle District of Tennessee, in which he alleged that he did not freely, voluntarily, understandingly, or intelligently enter the plea of guilty, because he was subjected to the coercion and undue influence of one of his attorneys; that he was advised to enter the plea of guilty or face a possible sentence of death; that, in truth and fact, the evidence would have shown that the person he was accused of killing attacked petitioner twice before the alleged murder, inflicting a serious knife wound that required hospital care; that the case, if properly presented, would have resulted in a manslaughter conviction of murder in the second degree; that he did not understand the nature of the charge against him or the consequences of his plea; that petitioner's legal counsel were incompetent and did not protect his constitutional rights, and permitted the prosecution to deny petitioner the right to be confronted by his accusers; that his legal counsel further called his mother, Mary Amy Woodroof, and informed her that if petitioner did not enter a plea of guilty, he would withdraw from the case; that counsel then informed him that if petitioner did not plead guilty, he might receive the death penalty; that his legal counsel was sick and unable to conduct the proper defense of his case; and that his counsel was incompetent and equivalent to no counsel, thus violating Article 1, Section 9, of the Constitution of Tennessee. Petitioner further contended that the prosecution was permitted to, and did, read written statements of the state witnesses, Clarence Wakefield and Willard Petre, before the jury after his plea of guilty, thereby depriving petitioner of his constitutional rights to meet his accusers face to face, in violation of the Constitution of Tennessee, and that this right "cannot be waived by the defendant to his legal counsel"; that petitioner was not confronted with the witnesses against him, but was, under the circumstances, prevented from cross-examining them.

Without taking evidence, the district judge denied the petition for the writ of habeas corpus for the reason that it failed to show that the State of Tennessee violated any federal right of the petitioner in obtaining the conviction, and, from such order of denial, petitioner Davis appeals.

Mention has been made of the order of the state trial court denying appellant's petition for a writ of habeas corpus, and

* Sitting by designation from the United States Court of Customs and Patent Appeals.

dismissal of the appeal from such order by the Supreme Court of Tennessee. It appears that neither the orders nor the opinion of the state trial court, or of the Tennessee Supreme Court, were in the file reviewed by the district judge. They were, however, set forth in the Appendix of appellee filed in the present appeal, and are not denied by appellant. In any event, they are here noted simply as a part of the background of the case, and are in no way controlling or pertinent to our determination.

█ The allegations in the petition filed in the District Court, which constitute the basis of this appeal, are similar to those that repeatedly come before us in petitions for writs of habeas corpus and appeals from the denial thereof. In this case, the allegations are, mainly, conclusions of the petitioner rather than factual averments, or are based upon hearsay. In United States ex rel. Feeley v. Ragen, 166 F.2d 976, 981 (C.A. 7), Judge Minton, now Mr. Justice Minton, speaking for the court, said:

"There should not be a rigid formalism in habeas corpus proceedings in which courts are seeking the substance as to the violation of constitutional rights. But it must be remembered that habeas corpus is a collateral attack by the courts of Federal jurisdiction invading the province of State jurisdiction, and the trial of the competency of counsel is only a phase of this collateral attack. To warrant such collateral investigations of the competency of counsel, the pleadings should lay a foundation therefor by proper factual averments, and competent evidence must clearly support such averments."

█ The claim made in the appellant's brief that he was denied his constitutional right to competent counsel is without merit. He was not denied counsel; he selected his own counsel.

Appellant's averment that he did not freely, voluntarily, understandingly, and intelligently enter his plea of guilty to this murder charge was based on the charge that he was subject to coercion and undue influence by one of his attorneys; that he was advised to enter a plea of guilty, or face, possibly, a sentence of death, when, in truth and fact, the evidence would have shown that the man who was killed had attacked petitioner "twice before this alleged murder"; that the case, if properly presented, "would have resulted in a manslaughter conviction of murder in the second degree"; that petitioner did not understand the nature of the charge against him or the consequence of his guilty plea; that petitioner's legal counsel were incompetent and did not protect his constitutional rights, and permitted the prosecution to deny petitioner his right to be confronted with his accusers.

With regard to the degrees of murder and the infliction of penalties therefor, we have recourse to the state laws. Under the statutes of Tennessee, upon conviction of murder in the first degree, a jury is impanelled to hear the evidence and fix the terms of punishment, which shall be either the infliction of the death penalty, or imprisonment in the state penitentiary for life, or for some period over twenty years. Tennessee Code Annotated 39–2405.

All kinds of murder, other than in the first degree, are, by the Tennessee Statute "deemed murder in the second degree." On a conviction for murder in the second degree, the penalty is imprisonment for not less than ten years nor more than twenty years. Tennessee Code Annotated 39–2408.

The gist of appellant's complaint really is that he received a sentence of twenty-one years for first degree murder, instead of a possible, and probable, sentence of twenty years for second degree murder.

█ We come, then, to the claim that appellant's counsel were incompetent, and permitted his constitutional rights to be denied him.

Appellant had counsel of his own choosing, and according to his own allegations, more than one counsel.

In Hudspeth v. McDonald, 120 F.2d 962, 968, (C.A.10), the court said:

"There is a vast difference between lacking the effective assistance of competent counsel and being denied the right to have the effective assistance of competent counsel. It is the denial of the right to have such assistance that gives the right to challenge a judgment of conviction by writ of habeas corpus. It is held without exception that the right to have counsel may be waived and that it is only when it is not waived that the validity of the proceedings may be challenged by writ of habeas corpus.

"The undisputed evidence is that appellee was represented by counsel of his own selection; that if counsel was drunk that condition was not apparent to the trial judge; that appellee did not call the condition of his counsel to the court's attention; and aside from a vague statement made by appellee, the record is conclusive that no request was made that the court appoint other counsel to represent appellee. The record fails to support the conclusion of the court below that the judgment of the Minnesota court was void because appellee was denied his constitutional right to be represented by counsel."

In United States ex rel. Darcy v. Handy, 203 F.2d 407, 425, 426, (C.A.3), the court said:

"The concept of due process of law contained in the Fourteenth Amendment unquestionably involves the right to have the assistance of counsel for one's defense in a criminal case. The amendment, however, is directed only to action by a state and its command in this regard accordingly is that the state through its officers shall not deny to a defendant in a criminal case the effective assistance of counsel for his defense. This may well impose a definite obligation upon the state through its courts to appoint competent counsel for indigent defendants in criminal cases. There is, however, as Judge Huxman pointed out in Hudspeth, Warden v. McDonald, 10 Cir., 1941, 120 F.2d 962, 968, 'a vast difference between lacking the effective assistance of competent counsel and being denied the right to have the effective assistance of competent counsel.' It is the latter only for which the state is responsible, the former being normally the sole responsibility of the defendant who selected his counsel. And so where, as in the case now before us, a defendant in a criminal case has retained counsel of his own choice to represent him it is settled by an overwhelming weight of authority that the commission by his counsel of what may retrospectively appear to be errors of judgment in the conduct of the defense does not constitute a denial of due process chargeable to the state.

"When counsel is retained by a defendant to represent him in a criminal case he acts in no sense as an officer of the state. For while he is an officer of the court his allegiance is to his client whose interests are ordinarily diametrically opposed to those of the state. It necessarily follows that any lack of skill or incompetency of counsel must in these circumstances be imputed to the defendant who employed him rather than to the state, the acts of counsel thus becoming those of his client and as such so recognized and accepted by the court unless the defendant repudiates them by making known to the court at the time his objection to or lack of concurrence in them. A defendant cannot seemingly acquiesce in his counsel's defense of him or his lack of it and, after the trial has resulted adversely, have the judgment set aside because of the alleged incompetence, negligence or lack of skill of that counsel."

Likewise, in Tompsett v. State of Ohio, 146 F.2d 95, 98, (C.A.6), this court said:

"All of the matters of which appellant complains except the use of perjured testimony to secure his conviction, stem from the negligence or misconduct of his attorney. There is nothing in the record from which an inference could be drawn that appellant was denied by the trial court the right of counsel or the right to be heard by himself and by his counsel. So far as this branch of the case is concerned, the question resolves itself into how far, if at all, appellant was bound by the acts of his attorney or his failure to act in the course of the trial. The incompetency or negligence of an attorney employed by a defendant does. not ordinarily constitute grounds for a new trial and a fortiori will not be grounds for the application of the Fourteenth Amendment. * * *

"The concept of this rule is that the lack of skill and incompetency of the attorney is imputed to the defendant who employed him, the acts of the attorney thus becoming those of his client and so recognized and accepted by the court, unless the defendant repudiates them by making known to the court at the time his objection to or lack of concurrence in them. A defendant cannot seemingly acquiesce in his attorney's defense of him or his lack of it and, after the trial has resulted adversely to defendant, obtain a new trial because of the incompetency, negligence, fraud or unskillfulness of his attorney."

In O'Malley v. United States, 285 F.2d 733, 734, (C.A.6), this court said:

"There remains for consideration appellant's additional contention that he was denied the effective assistance of counsel, and particularly his complaint that his counsel did not use a witness who appellant contends would have testified in his behalf, and that two other witnesses who would have testified for him were sent home by his counsel before the termination of the trial without being called to testify.

"Appellant's counsel was of his own choosing. Under such circumstances the rule has been often stated that only if it can be said that what was or was not done by the defendant's attorney for his client made the proceedings a farce and a mockery of justice, shocking to the conscience of the Court, can a charge of inadequate legal representation prevail. * * *

"In Anderson v. Bannan, supra, 6 Cir., 250 F.2d 654, 655, this Court pointed out, 'A criminal trial before a jury involves questions of policy and judgment, as well as knowledge of the law. In the aftermath of a trial, it is often found that even the most able of counsel may have erred in some respects.' In the opinion of trial counsel it may be advantageous not to cross-examine a certain witness, or not to use a witness who, although helpful to the defendant in certain respects, could be made a harmful witness on cross-examination. The testimony of prospective witnesses relied upon by a defendant may prove to be overvalued by the defendant and ineffective when fully developed and analyzed by defense counsel in his pretrial preparation. Counsel's decision not to subpoena or use certain witnesses is often a matter addressed to the judgment of the trial attorney. * * * Many questions may arise in the course of a trial, which must be left to the decision of the defense attorney. The fact that a different or better result may have been obtained if a different decision had been made, does not mean that the defendant has not had the effective assistance of counsel."

See also the recent opinion of this court in Harris v. Thomas, Warden, 341 F.2d 560, C.A.6.

Nothing that was claimed to have been done, or not done, by appellant's counsel of his own choosing, could be said

to justify a charge of inadequate legal representation on the ground that counsel's conduct made the trial a farce and a mockery of justice, shocking to the conscience of the court, mentioned in O'Malley v. United States, supra, as a condition to sustain a showing that such a defendant had not had the effective assistance of counsel.

Appellant contends that the prosecution was permitted to, and did, read written statements of the prosecution witnesses, Clarence Wakefield and Willard Petre, before the jury and thereby deprived petitioner of his constitutional right "to meet his accusers face to face in violation of Section 9, Article 1, Constitution of Tennessee," and that such conduct shows a violation of his constitutional right.

It is here to be remarked, for clarification, that the statements of the prosecution witnesses were not submitted to the jury during the course of the proceedings before appellant's plea of guilty, but were received subsequently for consideration by the jury in their determination of the penalty to be inflicted, in accordance with the Tennessee law.

There is no averment made as to what the statements of the prosecution witnesses consisted of, or what accusations were made, or whether they were relevant. If they were accusations relating to the crime of murder, to which appellant had already pleaded guilty, or if they were statements that had relevancy to the sentence to be fixed, it may well be that appellant's counsel forebore to make objection because of their judgment that appellant's case before the jury would stand in a better light without their making objections. The fact that, on appellant's plea of guilty to a charge of murder in the first degree, he received a sentence of twenty-one years rather than the death penalty, or life imprisonment, indicates that whatever was set forth in the statements of the witnesses for the state did not result in aggravating appellant's guilt in the minds of the jury, since he received, at their hands, the lowest sentence the law

permitted; and it seems, further, to follow from the foregoing that it was in the exercise of legal judgment and wisdom on the part of appellant's counsel that they concluded not to raise objections to the introduction of the statements in question, whatever they consisted of; and the conduct of counsel, in a situation involving the exercise of their judgment, is not subject to a charge of incompetency on their part, or deprivation of constitutional right as a result thereof.

Appellant alleges that his counsel informed him that he might have received the death sentence, and advised him to plead guilty, with the hope of securing a lesser sentence. One guilty of first degree murder might be given the death sentence, a sentence of life imprisonment, or a sentence of more than twenty years. On a trial, he might well have been convicted of first degree murder. Appellant admits second degree murder. It is known that men accused of crime often receive a lesser sentence when they plead guilty than when they fight the charge. In this case, on a plea of not guilty, the jury, if they convicted, would have, by statute, found the degree of murder, and would also have fixed the penalty. Appellant may well have avoided receiving the death penalty, or imprisonment for life, by his plea of guilty.

The lawyer who appellant claims advised him to plead guilty was Mr. Elvin Woodroof. It is this attorney who is alleged to have told appellant's mother, Mrs. Amy Woodroof, that if appellant did not enter a plea of guilty, he would withdraw from the case, and that if he did not plead guilty, he might receive the death penalty. Because of the spelling of the names, appellant's attorney seems to have been related to appellant's mother. He was stating the truth when he told appellant that he might receive the death penalty. Appellant might have received the death penalty in any event, even if he had not pleaded guilty. Counsel's statement to appellant with regard to his plea of guilty was, in all probability, wise advice. Mr. Woodroof could

have withdrawn from the case at any time he desired, with the court's permission.

Appellant's statement that one of his legal counsel was sick and unable to conduct the proper defense of his case is largely a conclusion. However, it appears that appellant does not rely upon sickness of his counsel as a reason for pleading guilty. On the other hand, he states that he pleaded guilty because of the advice of such counsel, and that such advice was given because his counsel was incompetent. But if appellant's allegation that he pleaded guilty because one of his counsel was sick and unable to conduct a proper defense, is accepted as an allegation of fact, it loses all force, since it appears that appellant had other counsel on the trial of the case, and could have had still additional counsel, if he desired, to take the place of Mr. Woodroof, if he withdrew from the case.

We are of the view that appellant's claims, all of which have been reviewed, are without merit.

In accordance with the foregoing, the order denying appellant's petition for a writ of habeas corpus is affirmed.