James Curtis WEATHERMAN, Petitioner,

v.

C. C. PEYTON, Superintendent, Virginia State Penitentiary, Respondent.

Civ. A. No. 68-C-33-D.

United States District Court
W. D. Virginia,
Danville Division.

Aug. 9, 1968.

Gerald L. Baliles, Asst. Atty. Gen., Richmond, Va., for respondent.

## OPINION and JUDGMENT

DALTON, Chief Judge.

This case comes before this court upon a petition for a writ of habeas corpus filed *in forma pauperis*, by James Curtis Weatherman, a state prisoner, pursuant to 28 U.S.C. § 2241. The case was transferred to this court from the United States District Court for the Eastern District of Virginia on June 18, 1968.

Petitioner is currently serving a term of fifty years in the Virginia State Penitentiary pursuant to a judgment of the Circuit Court of Henry County on April 24, 1961, wherein he was convicted for the crime of armed robbery. On May 8, 1961, petitioner was convicted of malicious wounding and sentenced by the same court to sixteen years confinement in the Virginia State Penitentiary. The sentences are to run consecutively. The convictions resulted after a trial by jury wherein the petitioner was represented by counsel, a North Carolina attorney, employed by petitioner's uncle. The court appointed counsel at the trial to assist petitioner's attorney with Virginia procedural matters. No appeal was taken from these convictions.

A plenary hearing was held in the Circuit Court of Henry County on September 21 and 22, 1967, as a result of a petition for a writ of habeas corpus filed in that court by the petitioner. The petitioner was represented by court appointed counsel at this hearing. After all evidence was heard, the Circuit Court denied the writ and dismissed the petition. An Appeal was taken to the Supreme Court of Appeals of Virginia and on April 24, 1968, the writ of error was denied.

Petitioner presents seven claims to this court, which are:

(1) that inflammatory news reporting denied petitioner a fair and impartial trial.

(2) that petitioner was denied the right, for about 10 days, to contact counsel of his own choosing.

(3) that petitioner has been tried twice for the same offense, with no objection from his counsel.

(4) that petitioner was denied the right to present witnesses to support his defense through the ineffective representation of counsel.

(5) that petitioner was denied in change of venue, in spite of inflammatory news stories, through the ineffective representation of counsel.

(6) that petitioner was denied an appeal from his convictions, through the ineffective representation of counsel.

(7) that one of the jurors was prejudiced against the petitioner because of the adverse publicity.

All of the above allegations were presented to the state courts with the exception of allegation number seven. The allegation as to a biased juror was not presented to the court until the morning of the state habeas corpus hearing. The court sustained an objection by the state not to hear this particular allegation because the state had not been aware of it and thus was unprepared. In regard to this particular allegation, this court feels that petitioner has not exhausted his state remedies in compliance with 28 U.S.C. § 2254, as interpreted in Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). The petitioner's allegation was not heard because it was not timely and properly presented. Therefore we will not consider it in the following discussion. We think the other claims are properly before this court and thus we will answer them.

The pertinent facts are these. The petitioner was arrested on December 16, 1960, and charged with malicious wounding, after the victim, who was a police chief in Spray, North Carolina, identified the petitioner as the person who had forced him at gunpoint to drive to Virginia and then had shot him. Apparently for some time it was doubted that the police chief would live because of the seriousness of his wounds, but it developed that he would. On December 29, 1960, the petitioner was charged with armed robbery under a warrant stating that he had robbed the police chief. Through the efforts of petitioner's uncle, an attorney, who had been in the Navy with the uncle, was employed to represent petitioner. The attorney, who had a law practice in North Carolina, interviewed the petitioner in late December of 1960, or early January of 1961. From this interview, it was de-termined that petitioner should enter the Southwestern State Hospital at Marion, Virginia for observation. The petitioner was returned to Henry County late in February, 1961, after the authorities at the hospital had determined that he was mentally capable of standing trial. During the time that petitioner was confined in the State Hospital the petitioner's attorney visited there to interview the authorities as to petitioner's mental condition. The counsel also testified that he had several lengthy telephone communications with the hospital autorities. Upon return, the petitioner was tried on the charge of armed robbery on April 24, 1961, and on the charge of malicious wounding on May 8, 1961, in the Circuit Court of Henry County. Having been found guilty of both charges, after jury trials, the petitioner was sentenced to confinement in the penitentiary for fifty years on the armed robbery conviction and sixteen years on the malicious wounding conviction, the sentences to run consecutively.

Petitioner's first claim is to the effect that inflammatory news reporting denied him the right to a fair trial. His claim is specifically directed against a local newspaper in Martinsville, Virginia, and against the other news media in general. Our attention is drawn to the recent case of Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966) in support of petitioner's contention that he was denied a fair trial by reason of the news media. We have read the newspaper articles, which the petitioner attached to his state habeas corpus petition. However, we do not think that the articles, along with the evidence presented at the state habeas corpus hearing, even begins to approach the magnitude of the conditions that existed in the *Sheppard* case, supra. In that case there was wide spread editorializing of a highly inflammatory nature, the presence of a great number of newsmen in the courtroom with special seats assigned, the news releases of the prospective jurors over two weeks before the trial, a reenactment of

the crime with the newsmen and their cameras present, a loose rein on the jurors who were allowed to make unsupervised telephone calls during the process of the trial, a broadcasting station assigned space next to the jury room, and a great combination of other circumstances which in its totality prevented the defendant from receiving a fair trial by an impartial jury. In the present case we do not think the articles about which the petitioner complains contain material of an inflammatory nature, but rather represent reasonable factual reporting which the public has a right to demand and the news media a right to give. Before the petitioner is entitled to habeas corpus relief, he must prove by a preponderance of the evidence that a constitutional right has been violated. Redd v. Peyton, 270 F.Supp. 757 (W.D. Va.1967). From a review of the record, we do not think the publicity of which the petitioner complains warrants any relief from this court on this claim. In rejecting this claim, we also reject petitioner's related claims that the newspaper articles published after his conviction are inflammatory and are adversely affecting his chances of obtaining parole or pardon. We note from the prison record that petitioner will not be eligible for parole until December of 1972.

■■■■ Petitioner's second claim is that he was denied the opportunity to contact counsel of his own choosing for about a ten day period. This allegation is supported only by the testimony of the petitioner. This is directly met by the testimony of a witness who was Sheriff at the time of petitioner's confinement in the county jail. He testified that if a request had been made, either the petitioner himself would have been allowed to contact an attorney; or that he or one of the jailers would have contacted an attorney for the petitioner. The record shows that the counsel, employed by petitioner's uncle arrived some twelve to fourteen days after the petitioner had been arrested, after apparently some difficulty had been experienced by the family in an attempt to secure lo-

cal counsel. Again we think that petitioner has failed to prove by a preponderance of the evidence that a constitutional right has been violated. The testimony of the petitioner was squarely met by contradicting testimony and thus petitioner's allegation must fall. Redd v. Peyton, 270 F.Supp. 757 (W.D.Va. 1967). We note in rejecting this claim that the events with which we are concerned occurred prior to the decisions in Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964) and Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and thus the principles enunciated in those cases are not applicable, since neither is retroactive. Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966).

■■■■ Petitioner's remaining claims are all allegations to the effect that the petitioner was denied the effective assistance of counsel as guaranteed by the Constitution. Specifically he alleges that his counsel denied him a change of venue which resulted in an unfair trial, that he was denied the right to present witnesses in his own behalf, that he was denied the right to appeal from his conviction and that he was tried for the same offense twice with no objection from his counsel. As noted earlier, petitioner's counsel was employed by the petitioner's uncle, thus we believe that petitioner had counsel of his own choosing. At no time, either before his trial, or after, did the petitioner appear before the court without counsel, nor was there any request to the court for the assistance of counsel or a complaint about the counsel that petitioner had retained. Thus we believe that petitioner was not denied counsel; he chose his own counsel. If there was incompetence of counsel, as petitioner contends, the attorney was of his own choosing and the state is in no way responsible for his shortcomings. Breedlove v. Beto, 276 F.Supp. 635 (S.D.Tex.1967). In United States ex rel. Darcy v. Handy, 203 F.2d 407, 425 (3rd Cir. 1953) where the defendant, who had retained counsel at trial,

alleged ineffective representation in a petition for a writ of habeas corpus, the court said:

The concept of due process of law contained in the Fourteenth Amendment unquestionably involves the right to have the assistance of counsel for one's defense in a criminal case. The amendment, however, is directed only to action by a state and its command in this regard accordingly is that the state through its officers shall not deny to a defendant in a criminal case the effective assistance of counsel for his defense. This may well impose a definite obligation upon the state through its courts to appoint competent counsel for indigent defendants in criminal cases. There is, however, as Judge Huxman pointed out in Hudspeth, Warden v. McDonald, 10 Cir. 1941, 120 F.2d 962, 968, 'a vast difference between lacking the effective assistance of competent counsel and being denied the right to have the effective assistance of competent counsel'. It is the latter only for which the state is responsible, the former being normally the sole responsibility of the defendant who selected his own counsel. And so where, as in the case now before us, a defendant in a criminal case has retained counsel of his own choice to represent him it is settled by an overwhelming weight of authority that the commission by his counsel of what may retrospectively appear to be errors of judgment in the conduct of the defense does not constitute a denial of due process chargeable to the state.

When counsel is retained by a defendant to represent him in a criminal case he acts in no sense as an officer of the state. For while he is an officer of the court his allegiance is to his client whose interests are ordinarily diametrically opposed to those of the state. It necessarily follows that any lack of skill or incompetency of counsel must in these circumstances be imputed to the defendant who employed him rather than to the state, the acts of counsel thus becoming those of his client and as such so recognized and accepted by the court unless the defendant repudiates them by making known to the court at the time his objection to or lack of concurrence in them. A defendant cannot seemingly acquiesce in his counsel's defense of him or his lack of it and, after the trial has resulted adversely, have the judgment set aside because of the alleged incompetence, negligence or lack of skill of that counsel.

■ Many cases are cited by the court in the *Handy* case, supra, to support the above line of thinking. More recent cases supporting this line of authority are: Howard v. Beto, 375 F.2d 441 (5th Cir. 1967); Breedlove v. Beto, 276 F.Supp. 635 (S.D.Tex.1967); Davis v. Bomar, 344 F.2d 84 (6th Cir. 1965) cert. denied 382 U.S. 883, 86 S.Ct. 177, 15 L.Ed.2d 124 (1965); United States ex rel. Wilkins v. Banmiller, 325 F.2d 514 (3rd Cir. 1963) cert. denied 379 U.S. 847, 85 S.Ct. 87, 13 L.Ed.2d 51 (1964); Hensley v. United States, 108 U.S.App. D.C. 242, 281 F.2d 605 (1960); United States v. Bertone, 249 F.2d 156 (3rd Cir. 1957). We agree with the line of reasoning in the above line of cases. If there was incompetence of counsel, as the petitioner contends, then certainly under the facts in this case, it would appear that the state is in no way responsible because it had no notice that the petitioner at any time needed the assistance of counsel or was dissatisfied with his employed counsel.

However there may be instances where even with retained counsel a trial may result in such a farce or mockery so as to violate petitioner's constitutional right. Thus this court feels compelled to discuss briefly the points raised and hence we do not dispose of the action solely upon the above basis.

■ Petitioner's claim which he couches in terms of double jeopardy is upon examination really one to the effect that the evidence from the malicious wounding trial overlapped into the

armed robbery trial. Petitioner's claim is that his lawyer was ineffective because he did not object to the introduction of certain evidence. It is noted that the victim of the armed robbery was also the victim of the malicious wounding and that both events happened within a very short interval of time. Mistakes or errors of counsel are not sufficient to establish a violation of the petitioner's constitutional right. This, at best, may constitute a mistake in judgment or trial tactics and it has repeatedly been held that such mistakes do not deprive an accused of a constitutional right. Tompa v. Commonwealth of Virginia, ex rel. Cunningham, 331 F.2d 552 (4th Cir. 1964). Thus we find no merit in this claim.

■ Another claim that is closely related to the above is that petitioner was denied the right to present witnesses in his own behalf, by the refusal of his counsel to summons them. This claim centers around a Dr. Luick, now deceased, who was on the staff of the Southwestern State Hospital during the time that the petitioner was confined there for observation prior to trial. Petitioner's counsel testified that he talked to Dr. Luick at length both in a personal interview and over the telephone, and came to the conclusion that her testimony would not have aided in the defense of the petitioner. We think that this decision was for the judgment of the attorney in his conduct of the case. Even if it now retroactively appears that this may have been an error of judgment, it is not sufficient to amount to a deprivation of a constitutional right. Tompa v. Commonwealth of Virginia ex rel. Cunningham, 331 F.2d 552 (4th Cir. 1964), Snead v. Smyth, 273 F.2d 838 (4th Cir. 1959).

■ The petitioner also claims that he was denied a change of venue for his trial, in spite of inflammatory news articles, through the ineffective assistance of counsel. We have earlier in this opinion held that the news articles were not of an inflammatory nature so as to deprive the petitioner of a fair trial. The testimony at the state habeas corpus hearing revealed that a possible change of venue was discussed between the petitioner and his counsel. Although there is a conflict as to how the two parties felt, it is clear that the question of a change of venue was never presented to the trial court. Where a defendant is represented by counsel of his own choice, he is bound by his decisions as to trial strategy. United States v. Hill, 310 F.2d 601 (4th Cir. 1962); United States v. Bertone, 249 F.2d 156 (3rd Cir. 1957). Even if this were a mistake in judgment, which petitioner claims, it is not sufficient to establish ineffective representation of counsel in violation of petitioner's constitutional right. Tompa v. Commonwealth of Virginia ex rel. Cunningham, 331 F.2d 552 (4th Cir. 1964); United States v. Hill, 310 F.2d 601 (4th Cir. 1962); Snead v. Smyth, 273 F.2d 838 (4th Cir. 1959). In the instant case a change of venue would be a tactic to gain a more favorable setting for the trial. As such, failure to request a change of venue does not amount to a denial of a constitutional right. In the absence of some extraordinary circumstance which we do not find, we do not think this claim provides any basis for which this court can give relief.

■ We have found, therefore, in those claims concerning those instances immediately surrounding the trial itself, that the conduct of the counsel did not amount to a deprivation of counsel in violation of any constitutional right. "Ordinarily, one is deprived of effective assistance of counsel only in those extreme instances where the representation is so transparently inadequate as to make a farce of the trial. Snead v. Smyth, 273 F.2d 838 (4th Cir. 1959). This is especially true where, as here, the defendant chose and employed his own counsel." Root v. Cunningham, 344 F.2d 1, 3 (4th Cir. 1965) cert. denied 382 U.S. 866, 86 S.Ct. 135, 15 L.Ed.2d 104 (1965). From a review of the record, we find that there was no fundamental unfairness or misrepresentation that caused petitioner's trial to result in a farce.

Petitioner's last claim is that he was denied the right to appeal his conviction through the ineffective representation of counsel. The testimony given at the state habeas corpus hearing is conflicting as to whether the attorney was or was not to perfect an appeal. However, there is no evidence that the petitioner or his counsel ever approached the court in any manner concerning an appeal. Petitioner, in no way, shows that he notified the court that he desired to perfect an appeal until apparently some five years later in the state habeas corpus petition. The right to appeal from a criminal conviction is not required by due process. McKane v. Durston, 153 U.S. 684, 14 S. Ct. 913, 38 L.Ed. 867 (1894). But when an appeal is provided, it must meet the requirements of due process and equal protection. Griffin v. People of State of Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956); Dowd v. United States ex rel. Cook, 340 U.S. 206, 71 S. Ct. 262, 95 L.Ed. 215 (1951). For petitioner to be entitled to post conviction relief, because of an alleged violation of a constitutional right, it is not enough to show that he was indigent, Pate v. Holman, 341 F.2d 764 (5th Cir. 1965), or that his privately employed counsel was negligent in not perfecting an appeal, United States ex rel. Boyance v. Commonwealth of Pennsylvania, 219 F. Supp. 12 (E.D.Pa.1963). The petitioner must show some state action. "State action is shown when a responsible official in the State's system of justice rejects a request for counsel or fails to take proper steps toward the appointment of counsel for a convicted defendant when he has knowledge of the defendant's indigency and desire for appellate counsel. When an accused person retains counsel on the original trial, the State may rely on the presumption that the accused's lawyer will protect his client's rights on appeal. But that presumption is rebuttable". Pate v. Holman, 341 F.2d 764, 775 (5th Cir. 1965). From a search of the record, we find absolutely no evidence to show that the state or the trial court was ever aware that the petitioner desired an appeal at the time of his conviction. Thus we can find no basis on which we can grant petitioner relief.

For the foregoing reasons, petitioner has failed to convince this court that he is entitled to any relief based on his allegations. It is therefore adjudged and ordered that the petition be dismissed and the writ denied.