**Curtis LANGFORD, Plaintiff-Appellant,**

v.

**STATE OF ALABAMA, Defendant-Appellee.**

**No. 27006.**

United States Court of Appeals Fifth Circuit.

Dec. 30, 1969.

Rehearing Denied and Rehearing En Banc Denied Feb. 19, 1970.

---

Curtis Langford, pro se.

Drayton Nabers, Jr., Court appointed, Frank P. Samford, III, Cabaniss, Johnston, Gardner & Clark, Birmingham, Ala., for appellant.

David W. Clark, Asst. Atty. Gen. of Ala., Macdonald Gallion, Atty. Gen. of Ala., Montgomery, Ala., for appellee.

Before RIVES, COLEMAN and MORGAN, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

This is an appeal from an order of the United States District Court denying appellant's petition for writ of habeas corpus. After exhausting all comparable state remedies, appellant Curtis Langford filed on November 30, 1966, a petition for writ of habeas corpus in the United States District Court. The petition was dismissed without a hearing; however, upon appeal this Court remanded for a plenary hearing, 387 F.2d 647. After such hearing, the District Court again denied the petition for writ of habeas corpus, and the appeal from this second denial after a hearing is the one presented to us for consideration.

Curtis Langford was convicted of robbery on December 16, 1964, and sentenced to a term of ten years in the Alabama State Penitentiary. He did not perfect an appeal from this conviction. During the trial Langford was represented by retained counsel who was employed for him by his father, Ben Langford. The attorney who was representing Curtis Langford withdrew from the case without giving notice of appeal, although he knew of Langford's desire to appeal. This desire to appeal was communicated to the State Trial court on several occasions and was verified by several witnesses. During cross-examination, the following testimony was elicited from appellant Langford:

Q. Did you ask for an appeal after your conviction?

A. Yes, sir.

Q. To whom did you note this appeal, to the Court?

A. I addressed it to the Court, yes, sir.

Q. Did you ask for an appeal as a pauper?

A. No, sir. I just stated that I would like to appeal the conviction. I had also stated it before to my lawyer that if I was convicted I would like to carry the case all the way. That was in the little room there on the side.

Curtis Langford's father, Ben Langford, responded under redirect examination as follows:

Q. Did he [Curtis Langford] say anything in court at that time to the Judge? Did he make any statement?

A. Yes, sir, he did.

Q. Was it a short statement or was it a lengthy statement?

A. It was a short statement.

Q. In that statement did he say anything about wanting to appeal the conviction?

A. Yes, sir. He was asking for that.

Mr. Robert Lee Eggleston, who was present in court when Curtis Langford was convicted, stated under oath that he heard the appellant express his desire in the courtroom for an appeal. The record is quite lucid on this point and there is no doubt that Langford's desire to appeal was communicated to the Judge.

The other principal factual question concerns whether a responsible state official was made cognizant of Curtis Langford's indigency. The only evidence that such was communicated to the state is the discussion of Ben Langford with the Trial Judge concerning a transcript. After the December 16th trial, Ben Langford testified that the following occurred:

Q. (Mr. Clark) * * * Well, do you remember which response the Judge made when he [Curtis Langford] said something to him about an appeal, if any?

A. (Ben Langford)—Well, I don't know what he told him. But he told me. If you want me to state that, I will.

THE COURT: The Judge told you what?

A. That I could go to the Clerk and ask him for $75.00 and get the transcript. That he would do it for me if I get up $75.00.

THE COURT: Now, the Judge told you this?

A. That's right.

*　*　*　*　*　*

THE COURT: Judge Archer told you you could go to the Clerk and get a transcript for $75.00?

A. He told me I could go and speak to the Clerk and the Clerk would tell me what it would cost, about $75.00.

THE COURT: What did the Judge say to you about a lawyer, if anything? The Judge knew you had Mr. Hamm retained, that you would pay him. And the Judge, when you were talking with him, assumed, I'm sure, you were interested in an appeal and that you were going to hire a lawyer and get whatever it took. *You didn't tell the Judge that you all didn't have any money at that time?* (Emphasis supplied).

A. *No.* (Emphasis supplied).

THE COURT: And you didn't tell the Judge that. Well, at that time you really had not had any discussion with Mr. Hamm about the appeal?

A. Yes, he had. If you want me to finish.

THE COURT: All right. Finish it.

A. Well, with the Judge, I asked him about it, he told he I would have to get one. *I told him I didn't have any money.* He said, you have to get it in thirty days. I didn't know nothing about the six months at the time. I could have raised it in that length of time, but I didn't know nothing about it. But, now, the thirty days, that made me give up. And that's the only thing lacking, not knowing. (Emphasis supplied).

■■ "For a petitioner to be entitled to post-conviction relief, it is not enough to show that indigency occasioned the petitioner's inability to employ counsel or to appeal; the petitioner must show that the State deprived him of his Fourteenth Amendment rights. State action is shown when a responsible official in the State's system of justice rejects a request for counsel or fails to take proper steps toward appointment of counsel for a convicted defendant when he has knowledge of the defendant's indigency and desire for appellate counsel. When an accused person retains counsel on the original trial, the State may rely on the presumption that the accused's lawyer will protect his client's rights on appeal. But that presumption is rebuttable." Pate v. Holman, 341 F.2d 764 (5 Cir., 1965); Worts v. Dutton, 395 F.2d 341 (5 Cir., 1968); Edge v. Wainwright, 347 F.2d 190 (5

Cir., 1965). There is no question but that the Trial Judge was given notice that Langford desired to appeal. The District Court in its opinion denied Langford's petition stating that he failed to give notice to a state official he wished to appeal. The district Court opined:

> "Title 15, Section 314(4) [318(4)], Code of Alabama 1940 (Recomp. 1958), requires the court to cause to be entered on its minutes a recital or notice of appeal. No such notice appears on the minutes of this case."

That Court was in error to conclude from the above that no notice of appeal was given to a state official. The testimony of three individuals concurred in the fact that Langford informed the Trial Court he wished to appeal. No requirement has been established that the notice of appeal must be formal. On the contrary, the law is pellucid that if a state official has "knowledge" of the desire to appeal this is sufficient. Pate v. Holman, 341 F.2d 764 (5 Cir., 1965). It is quite immaterial how the state official acquires this knowledge.

The signal issue confronting the Court is a factual one as to whether "a responsible official in the state's system of justice" was made aware of Langford's indigent status on appeal. The District Court did not discuss this question.

Most cases concerning appointment of counsel on appeal for an indigent who retained his attorney at trial have been concerned with whether a state official knew of the desire to appeal. In the case at bar, Curtis Langford stated in court he wished to appeal. In this appeal, it is the second part of the double criterion of communication to a state official which appears to be absent, viz., indigency.

■■ The right to counsel on appeal is fundamental. It is not dependent upon the use of magic words such as "pauper" or "indigent"; however, the thought contained in these terms must be conveyed to a state authority, i.e., the

lack of money. In this case, it is not clear that this thought was brought home to the Trial Judge. The testimony of Ben Langford contains a contradiction on this point. When asked directly by the District Judge whether he stated to the Trial Judge that they didn't have any money, Ben Langford answered, "No." However, when later discussing on the stand what he told the Trial Judge, Ben Langford said he informed him that he didn't have any money. The testimony is not certain on this point. There is no other testimony in the record concerning indigency and we cannot rely solely on these opposing statements. Therefore, as to the results reached by the District Court on this contention, we must affirm.

■ Curtis Langford's final contention is that he was denied assistance of counsel during his 1964 trial. The case of Howard v. Beto, 375 F.2d 441 (5 Cir., 1967), is the latest pronouncement of the law by this Court on this point. To reiterate the Court's view in that case:

> "The district court found, however, based upon the admission of Howard and the state trial judge's docket entries which were admitted in evidence, that Howard's mother had retained counsel to represent Howard and that such counsel did, in fact, represent him when he entered guilty pleas at his first trial. There is, of course, a distinction to be made between the lack of effective assistance of competent counsel and being denied the right to have the effective assistance of competent counsel. It is the latter that opens a judgment to challenge by habeas corpus. Here the attorney's alleged incompetence cannot be imputed to the state." (Cases omitted).

A thorough discussion of the cases concerned with this problem is contained in dictum of Breedlove v. Beto, 404 F.2d 1019 (5 Cir., 1968). However, as the most recent and exacting case on the question, we adhere to *Howard*, supra.

Accordingly, the appellant's petition for writ of habeas corpus was correctly

denied, and the final judgment of the District Court is affirmed.

Affirmed.

COLEMAN, Circuit Judge (concurring):

I agree with Judge Morgan that the judgment of the District Court, denying habeas corpus, should be affirmed.

In view of the thoroughly exhaustive and admirably reasoned opinion of this Court in Pate v. Holman [Judges Rives, Wisdom and Bell] 341 F.2d 764 (1965), I find no necessity for elaborating upon the applicable law.

In my view, these are the decisive factors in this appeal:

1. Regardless of who paid the fee, Langford was represented at his trial by counsel privately retained and privately paid.

2. Upon the return of the verdict Langford did express a desire to appeal, but not as an indigent. Indigency was not mentioned.

3. The conversation between Langford's father and the trial judge did not amount to state rejection of a request for a trial transcript at public expense. Apparently this conversation took place in an informal manner, at the judge's office, in which the father asked what a transcript would cost. The judge responded to this request for information. The father then said he didn't "have any money". This was considerably short of an assertion that he was without property or resources from which the money could be raised. In any event, the indigency of the defendant, not his father, was the real issue. Presumably the trial judge at the time of this conversation was under the impression that Langford was still represented by his privately retained counsel. Hence, at this informal conference the trial judge was under no obligation to assume the role of counsel and to advise the father of options which could have been exercised, Pate v. Holman, *supra.*

This isolated incident at the office of the trial judge simply did not amount to state rejection of a request for a trial transcript at public expense pursuant to a showing of indigency.

RIVES, Circuit Judge (dissenting):

This case involves two issues: (1) Whether or not Langford was denied his constitutional right to appeal his conviction in the Alabama state courts, and (2) whether or not he was denied unconstitutionally his right to effective assistance of counsel. My brothers, in affirming the district court's denial of Langford's petition for habeas corpus, answer both questions in the negative. In dissenting, I respectfully submit that both questions should be answered in the affirmative.

I.

Langford contends that the State of Alabama denied his constitutional right of appeal in that the trial court judge did not appoint counsel to represent him in appealing the conviction. This contention is based on four factors: (1) At the time of his conviction, Langford was indigent and unable to afford counsel on appeal; (2) Langford wanted to appeal his conviction and informed the trial judge of his desire to appeal; (3) Langford's father informed the trial judge after the conviction that he could not afford the cost of preparing the transcript for his son's appeal; (4) neither Langford nor his father was informed of Langford's right to appeal his conviction as an indigent with court-appointed counsel.

The district court pursuant to an order of this Court, Langford v. Alabama, 387 F.2d 647 (5 Cir., 1968), conducted a hearing on whether or not Langford had been denied the right to appeal his conviction. The district court in denying Langford's petition concluded:

"From the evidence the court finds that the trial judge was not notified by the defendant, Curtis Langford, of his desire to appeal as an indigent person * * *.

\* \* \* \* \* \*

"Under the circumstances, taking into consideration all of the record in the case, including the testimony of witnesses at the evidentiary hearing, it would be unfair for this court to take the position that the judge or some responsible State official was notified that Mr. Langford was an indigent person and that he wanted to take an indigent appeal."

Where a defendant is represented at trial by retained counsel, this Court has held that the state has no affirmative duty to appoint counsel for appeal unless the trial judge, or some other responsible state official, has knowledge that the defendant is indigent and that he wishes to appeal.[1] This Court has construed Pate v. Holman, as requiring only that the trial judge (or some other responsible state official) have knowledge of a defendant's desire to appeal and of his indigency.[2]

My brothers agree that knowledge by a state official, not necessarily an express request by a defendant for appointment of appellate counsel, is the essential finding required by *Pate*. I am in full agreement with my Brother Morgan's finding that the State trial court judge had knowledge of Langford's desire to appeal, and thus agree with his holding that the district court erred in

---

1. Pate v. Holman, 341 F.2d 764 (5 Cir. 1965), *modified* 343 F.2d 546 (5 Cir. 1965); Beto v. Martin, 396 F.2d 432 (5 Cir. 1968); Goforth v. Dutton, 409 F.2d 651 (5 Cir. 1969).

   Other circuit courts have found a denial of a defendant's constitutional right of appeal where the defendant sought appeal and was not informed by the trial court *or* his retained counsel of his right to obtain court-appointed counsel on appeal. Williams v. Coiner, 392 F.2d 210 (4 Cir. 1968); *see* Wynn v. Page, 369 F.2d 930 (10 Cir. 1966) (fundamental right to assistance of counsel concerning right of appeal not adequately safeguarded).

   Another circuit court has recently questioned in dictum the constitutional validity of the Pate v. Holman requirements:

   "It is also arguable, though the point was not raised on this appeal and we need not decide it, that drawing a distinction between cases in which the assistance of counsel on appeal was expressly requested of the State, e. g., Pate v. Holman, 341 F.2d 764 (5 Cir. 1965), and those in which no such request was made, e. g., United States ex rel. Bjornsen v. LaVallee, 364 F.2d 489 (2 Cir. 1966), is no longer permissible in light of the Supreme Court's emphasis in Miranda v. State of Arizona, 384 U.S. 436, 473, 86 S.Ct. 1602, 16 L.Ed.2d 694 [10 A.L.R.3d 974] (1966) upon the importance of advising all defendants, whether they appear to be rich or poor, knowledgeable or ignorant, of their constitutional right to receive the assistance of counsel from the onset of the accusatory stage in criminal proceedings, a right which also extends, of course, to the appellate stage, Douglas v. State of California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963)."
   United States ex rel. Maselli v. Reincke, 383 F.2d 129, 134 n. 7 (2 Cir. 1967).

2. Horsley v. Simpson, 400 F.2d 708, 711 (5 Cir. 1968); Beto v. Martin, 396 F.2d 432, 434 (5 Cir. 1968); Worts v. Dutton, 395 F.2d 341, 344 (5 Cir. 1968); Edge v. Wainwright, 347 F.2d 190, 192 (5 Cir. 1965).

   Even absent this Court's construction, a duty should not be placed on a defendant to communicate expressly his desire to appeal and his condition of indigency to the trial court judge. The Supreme Court in discussing appointment of appellate counsel has stated:

   "We think the documents contained in this transcript demonstrate that respondent did indicate to the Missouri courts his desire for counsel on appeal. But even if such a request had not been made, we do not think its absence would amount to a waiver of respondent's rights. It is now settled 'that where the assistance of counsel is a constitutional requisite, the right to be furnished counsel does not depend on a request.' Carnley v. Cochran, 369 U.S. 506, 513 [82 S.Ct. 884, 8 L.Ed.2d 70]. When a defendant whose indigency and desire to appeal are manifest does not have the services of his trial counsel on appeal, it simply cannot be inferred from defendant's failure specifically to request appointment of appellate counsel that he has knowingly and intelligently waived his right to the appointment of appellate counsel."
   Swenson v. Bosler, 386 U.S. 258, 260, 87 S.Ct. 996, 997–998, 18 L.Ed.2d 33 (1967).

concluding that no notice of appeal was given to a State official.

As to the second element of the *Pate* criterion—knowledge by a responsible state official of a defendant's indigency —my brothers find the record both unclear and conflicting. Therefore, the district court's denial of Langford's petition was affirmed. It is my opinion that the trial judge did have knowledge of Langford's inability to afford counsel on appeal, and I must dissent from this particular holding of my brothers.

As stated above, *Pate* requires only that the trial judge (or some responsible state official) have knowledge of a defendant's indigency. As my Brother Morgan states, the right to counsel "is not dependent upon the use of magic words such as 'pauper' or 'indigent'; however, the thought contained in these terms must be conveyed to a state authority, i. e., the lack of money." I would add that the thought conveyed to a state authority must be the inability to afford appellate counsel, not the total lack of funds. Griffin v. Illinois, 351 U.S. 12, 18–19, 76 S.Ct. 585, 100 L.Ed. 891 (1955). The testimony of Ben Langford, Curtis Langford's father (see p. 762, Judge Morgan's opinion), is conflicting as to whether or not the Langfords had any money at the conclusion of Curtis'

trial. However, his testimony does demonstrate that the Langfords could not afford the $75 transcript fee. Knowledge that the father[3] could not afford the cost of preparing a transcript for appeal was tantamount to knowledge by the trial judge that Langford needed assistance from the State—through court-appointed counsel and a free transcript—to perfect his appeal. To hold that this Court's decision in *Pate* requires more is to exalt form over substance in the protection of a vital constitutional right.

Further, for another reason, I am of the opinion that the requirements of Pate v. Holman were satisfied. Under an Alabama statute enacted in 1963 (before Langford's conviction in 1964), the trial judge was under a duty to initiate an inquiry about Langford's financial ability once the judge had knowledge of Langford's desire to appeal his conviction.[4] The fact that notice of appeal was not recited in the minutes (as required by the statute) is not conclusive evidence of notice, especially where the record indicates, as my brothers agree, that the trial court did have knowledge of Langford's desire to appeal.

Therefore, under Alabama law, a trial judge would have to initiate an inquiry concerning a defendant's financial abili-

3. Although Curtis Langford's indigency is the crucial inquiry, his father's financial inability to obtain the trial transcript for purposes of appeal is relevant to the question of Langford's indigency. The trial judge knew that Langford had been in jail during the thirteen months preceding his trial in 1964; that since his indictment for this offense in 1961, Langford had been in jail during most of this time; and that the father had employed an attorney to represent his son at the trial. These facts were sufficient notice that Langford was entirely dependent upon his father's financial support.

4. Section 318(4), Title 15 of the Code of Alabama (pocket supplement) reads, in part:
"In all criminal cases wherein a defendant has been convicted of a serious offense in which an appeal lies directly to the Supreme Court or court of appeals, and if said defendant expresses

his desire to appeal said conviction, the court shall cause to be entered upon its minutes a recital of notice of appeal. The court shall then ascertain and make findings in reference to the appeal concerning those items listed as 1, 2, and 3 in section 318(1) of this title. [1. Whether or not defendant has arranged to be represented by and have the assistance of counsel. 2. Whether or not defendant desires the assistance of counsel. 3. Whether or not defendant is able financially or otherwise to obtain the assistance of counsel.]
"If it appears that defendant desires to appeal and is unable financially or otherwise to obtain the assistance of counsel on appeal and defendant expresses the desire for assistance of counsel the trial court shall appoint counsel to represent and assist defendant on appeal * * *."

ty to obtain appellate counsel once the trial judge knew that the defendant desired an appeal. A defendant convicted in an Alabama state court who informs the trial court of his desire to appeal should not be penalized under the requirements of *Pate* (i.e., that some responsible state official have knowledge of his indigency) for failing to inform the court of his indigency, but should be permitted to rely upon the statutory duty of the trial judge to inquire about his financial ability to obtain counsel on appeal.

In the case *sub judice* the trial judge had knowledge that Langford desired an appeal but did not inquire into his ability to afford the cost of appellate counsel. Langford, having satisfied the duty required of defendants by the Alabama statute, should be found to have complied with the requirements of Pate v. Holman.

## II.

The record shows that Langford's retained trial counsel had knowledge of Langford's desire to appeal his conviction and the inability of Langford and his family to afford counsel's fee on appeal. Langford contends that counsel's failure to advise him of his right to have court-appointed counsel on appeal denied his constitutional right to effective assistance of counsel.

This Court in Breedlove v. Beto, 404 F.2d 1019 (5 Cir. 1968), in dictum discussed the contention that defendant's retained counsel was so ineffective as to amount to an unconstitutional denial of counsel. The majority decisions have

drawn no distinction between retained counsel and appointed counsel in considering the adequacy-of-counsel question.[5] Other decisions, differentiating between appointed and retained counsel, have denied the ineffective assistance-of-counsel contention on the grounds that unless state officials outwardly prevent privately retained counsel from performing his duties, there is no state action and thus no denial of fourteenth amendment rights.[6]

This Court's standard for whether there was unconstitutionally ineffective counsel is apparently established in Williams v. Beto, 354 F.2d 698 (5 Cir. 1965).[7] However, according to a recent decision of this Court, our position on the issue of whether the inquiry is limited to court-appointed counsel seems unclear. Breedlove v. Beto, *supra*. This uncertainty arises because of apparently conflicting decisions by this Court. In Howard v. Beto, 375 F.2d 441, 442 (5 Cir. 1968) (per curiam), which my brothers conclude is controlling, the Court stated in effect that an ineffective retained counsel's actions may not be imputed to the state. However, in Bell v. Alabama, 367 F.2d 243, 247 (5 Cir. 1966), Judge Tuttle commenting on the effective assistance-of-counsel test stated: "It is clear that this test applies to cases in which counsel is retained by or for an accused as well as to cases in which counsel is appointed to represent an indigent defendant." Furthermore, in Porter v. United States, 298 F.2d 461, 463 (5 Cir. 1962), Judge Brown stated: "The Constitution assures a defendant effective representation by counsel whether the attorney is one of his choos-

5. Breedlove v. Beto, *supra* at 1020 n. 1; *see* United States ex rel. Maselli v. Reincke, 383 F.2d 129 (2 Cir. 1967); Wilson v. Phend, 417 F.2d 1197 (7 Cir., Oct. 28, 1969); Wilson v. Rose, 366 F.2d 611 (9 Cir. 1966); Note, Effective Assistance of Counsel for the Indigent Defendant, 78 Harv.L.Rev. 1434 (1965).

6. Davis v. Bomar, 344 F.2d 84 (6 Cir. 1965); Hudspeth v. McDonald, 120 F.2d 962 (10 Cir. 1941); Johnson v. Smith,

295 F.Supp. 835 (N.D.Ga.1968); Weatherman v. Peyton, 287 F.Supp. 819 (W.D. Va.1968).

7. My views that a more strict standard should be required are expressed in a dissenting opinion in Daugherty v. Beto, 388 F.2d 810, 816, 817 (5 Cir. 1967); *see also* Note, Effective Assistance of Counsel for the Indigent Defendant, 78 Harv.L.Rev. 1434, 1435 (1965).

ing or court-appointed." [8] Although *Porter* involved a section 2255 petition for post-conviction relief from a sentence for violation of a federal statute, the above statement from *Porter* has been adopted as authority for the proposition that a state conviction can be challenged because of ineffective assistance of counsel, even though the counsel was privately retained. Wilson v. Rose, 366 F.2d 611 (9 Cir. 1966).

I would reject the holding of Howard v. Beto, *supra*, and adopt the views of the Second, Fourth and Ninth Circuits. United States ex rel. Maselli v. Reincke, *supra*; Wilson v. Rose, *supra*; Puckett v. North Carolina, 343 F.2d 452 (4 Cir. 1965). These decisions would allow Langford, although represented by retained counsel at his trial, to raise an ineffective assistance-of-counsel argument. As stated by the Court in *Maselli:*

"Nevertheless, the State contends that collateral relief from a state conviction may not be had unless counsel's incompetency may be attributed to the State, citing Farrell v. Lanagan, 166 F.2d 845 (1 Cir.), cert. denied, 334 U.S. 853, 68 S.Ct. 1509, 92 L.Ed. 1775 (1948). Such incompetency, it is urged, must be of the sort of

which the trial court may take cognizance and which it has a duty to correct. It cannot be gainsaid that this position has its proponents. See, e.g., Davis v. Bomar, 344 F.2d 84 (6 Cir.), cert. denied, 382 U.S. 883, 86 S.Ct. 177, 15 L.Ed.2d 124 (1965); see United States ex rel. Darcy v. Handy, 203 F.2d 407, 427 (3 Cir. 1953). Other courts, however, have more wisely focused their attention on the merits of each claim of incompetency of counsel, see, e. g., United States ex rel. Fazio v. Fay, supra [348 F.2d 418]; United States v. Garguilo, supra [324 F.2d 795]; Snead v. Smyth, 273 F.2d 838 (4 Cir. 1959); Riddle v. McLeod, 240 F.2d 206 (10 Cir. 1957), thereby insuring that each defendant has received the fundamental fairness required by the Fourteenth Amendment."

383 F.2d at 133. Thus, the test should not be whether the state denied effective assistance of counsel, but whether Langford was denied his right of appeal because he did not have effective representation.[9]

Langford was denied effective assistance of counsel when his trial counsel, knowing that he desired to appeal his conviction and that neither he nor his father could afford appellate counsel, did

---

8. This statement was quoted with approval by this Court in Randazzo v. United States, 339 F.2d 79, 81 (5 Cir. 1964) and also by other courts. Wilson v. Rose, 366 F.2d 611, 615 (9 Cir. 1966); United States ex rel. Williamson v. LaVallee, 282 F.Supp. 968, 971 (E.D.N.Y.1968); Holland v. Boles, 225 F.Supp. 863, 865–866 (N.D.W.Va.1963).

9. In Breedlove v. Beto *supra*, the Court articulated the differences between the two viewpoints:
"The first argument for [the Howard v. Beto] viewpoint is that since there is no state action, there can be no denial of the Fourteenth Amendment right to a fair trial. However, the majority viewpoint's reply is that in light of the rationale of Shelley v. Kraemer, 1948, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161, which held that the State participation in an unconstitutional activity was sufficient state action to invoke the

Fourteenth Amendment, this argument cannot stand because if there was in fact incompetent counsel under the standards for appointed counsel, the state's participation in the trial which was fundamentally unfair because of the incompetent retained counsel is sufficient state action. See generally, Williams, The Twilight of State Action, 1962, 41 Texas L.Rev. 347. The second rationale of the minority viewpoint is that since defendant selected the lawyer, he is presumed to acquiesce in all of his attorney's activities. Yet, the majority's reply is that the basis of the *Gideon* requirement—that a man is not competent to represent himself at a criminal trial—seems to require the conclusion that he is incompetent to evaluate accurately the ability of his lawyer before the trial or the quality of representation at the trial."
404 F.2d at 1020 n. 1.

not inform him of his right to have court-appointed counsel and a transcript provided by the State on appeal. Williams v. Coiner, 392 F.2d 210, 213 (4 Cir.1968); Puckett v. North Carolina, *supra.* As stated by the Court in *Williams*:

"Equal protection of the law is not satisfied where the nature of appellate review or the presence or absence of review of a person's conviction 'depends on the amount of money he has.' Griffin v. People of State of Illinois, 351 U.S. 12, 19, 76 S.Ct. 585, 591, 100 L.Ed. 891 (1956). If upon investigation it is found that Williams desired and sought an appeal, that he was refused by his lawyers because of his indigence and that he was not advised of his right to have the state provide counsel and the requisite transcript, then the District Court should order petitioner's release unless the state's appellate courts will grant a delayed appeal. Puckett v. State of North Carolina, 343 F.2d 452 (4th Cir. 1965); Newsom v. Peyton, 341 F. 2d 904 (4th Cir.1965)."

392 F.2d at 213.

For the above reasons, I am of the opinion that Langford was unconstitutionally denied his right to appeal the state conviction as an indigent and his right to effective assistance of counsel. I therefore respectfully dissent.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing is DENIED and the Court having been polled at the request of one of the members of the Court and a majority of the Circuit Judges who are in regular active service not having voted in favor of it, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is also denied.

RIVES, Circuit Judge:

I dissent from the denial of rehearing by the original panel.